**Larry MEUWISSEN, Petitioner,**

v.

**DEPARTMENT OF INTERIOR,**
**Respondent.**

No. 00–3107.

United States Court of Appeals,
Federal Circuit.

Dec. 4, 2000.

Michael W. Unger, Rider, Bennett, Egan & Arundel, LLP, of Minneapolis, Minnesota, argued' for petitioner. With him on the brief was Michael M. Lafeber.

Patricia M. McCarthy, Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, of Washington, DC, argued for respondent. On the brief were David M. Cohen, Director, Kirk T. Manhardt, Assistant Director, and Eric J. Nestor.

Before MICHEL, LOURIE, and RADER, Circuit Judges.

LOURIE, Circuit Judge.

Larry Meuwissen petitions for review of the final decision of the Merit Systems Protection Board ("the Board") dismissing his Individual Right of Action ("IRA") appeal filed pursuant to 5 U.S.C. § 1221 (1994) for failure to state a claim upon which relief can be granted. *Meuwissen v. Dep't of Interior*, No. CH–1221–98–0870–W–1, 84 M.S.P.R. 621 (M.S.P.B. Oct.18, 1999) (final order). Because Meuwissen did not make a disclosure that was protected under the Whistleblower Protection Act of 1989, Pub.L. No. 101–12, 103 Stat. 16 (codified in scattered sections of 5 U.S.C.) ("the WPA"), we affirm.

## BACKGROUND

Mr. Meuwissen was employed as a temporary attorney-advisor with the title of "Administrative Judge" in the Department of Interior's Office of Hearing and Appeals ("the Agency"). His specific duties included determining heirship in accordance with the White Earth Reservation Land Settlement Act of 1985, 25 U.S.C. § 331 note (West Supp.2000) ("WELSA").[1] *Id.* Short-

1. WELSA provides for the payment of mone-    tary compensation for lands on the White

ly after his appointment, Meuwissen was assigned a case that raised the issue whether "illegitimate" children could participate as "heirs" under WELSA. *See In re WELSA Heirship Determination of Esther Bellecourt Smith,* No. WC 96–0199 (Dep't of Interior June 12, 1997) (*"Smith"*). In a previous case, Meuwissen's predecessor had concluded that, under the applicable Minnesota inheritance statute, illegitimate children were not "heirs" as defined in WELSA. *In re WELSA Heirship Determination of Richard C. Beaupre,* No. WC 93–0052 (Dep't of Interior Apr. 30, 1992), *aff'd,* 25 IBIA 133 (1994) (*"Beaupre"*). In a related case, the Eighth Circuit held that the definition of "heir" in WELSA, which applies the Minnesota inheritance law relied on in *Beaupre,* did not invidiously discriminate against illegitimate children in violation of the due process clause of the Fifth Amendment. *Shangreau v. Babbitt,* 68 F.3d 208 (8th Cir.1995).

In April of 1997, Meuwissen met with his supervisors, Director Barry Hill and Deputy Director James Terry, to explain the approach that he would take to address "those prior decisions [holding that illegitimate children were not heirs under WELSA] incorrectly decided by a previous judge." *Meuwissen v. Dep't of Interior,* No. CH–1221–98–0870–W–1, slip op. at 3 (M.S.P.B. Dec.1, 1999) (initial decision) (alteration in original). His supervisors responded by stating: "If you could find a way to change that result, it would sure solve a lot of problems for us." *Id.* In June of 1997, Meuwissen faxed a draft copy of his opinion to Deputy Director Terry, who called back and left a message stating: "Smith excellent, right on the mark." *Id.*

In his final decision, Meuwissen stated that the *Beaupre* case was based on a conclusion that was "barren of any further explanation, analysis or reasoning and . . .

Earth Reservation in Minnesota that were transferred from Indians to non-Indians as a

contrary to the history and purpose of the WELSA Act." *Id.* at 4. His opinion further stated that he declined to follow this precedent because it was "an erroneous interpretation of the WELSA Act." *Id.* Thereafter, the Interior Board of Indian Appeals reversed his decision, and Meuwissen's temporary appointment was terminated by the Agency. *Id.* at 5. Meuwissen's decision in *Smith* was one of the stated reasons for his termination. *Id.*

After filing a complaint at the Office of Special Counsel, Meuwissen filed an IRA appeal to the Board, alleging that he was fired in retaliation for making disclosures that were protected under the WPA. In response, the Agency filed a motion to dismiss for lack of jurisdiction for failure to make any nonfrivolous allegation of a "protected disclosure" under the WPA. The administrative judge ("AJ") dismissed Meuwissen's appeal for failure to state a claim upon which relief can be granted, concluding that neither his conversation with his supervisors nor his decision in the *Smith* case were "protected disclosures" under the WPA. *Id.* at 10–11.

Meuwissen appealed the AJ's initial decision to the full Board. The Board denied his petition for review, thus rendering the initial decision final. 5 C.F.R. § 1201.113(b) (2000). Meuwissen timely appealed to this court. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(9) (1994).

## DISCUSSION

■ The scope of our review in an appeal from a decision of the Board is limited. We must affirm the Board's decision unless it was: "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C.

result of Congressional acts in 1906 and 1907.

§ 7703(c) (1994); *Gibson v. Dep't of Veterans Affairs,* 160 F.3d 722, 725 (Fed.Cir. 1998). Interpretation of a statute is a question of law that we review *de novo. Frederick v. Dep't of Justice,* 73 F.3d 349, 351–52 (Fed.Cir.1996).

Meuwissen argues that the Board erred in concluding that his statements to his supervisors and his published *Smith* decision were not "protected disclosures" under the WPA. Meuwissen contends that disclosures to a direct supervisor are protected if the alleged wrongdoing is an agency-wide practice that is not directly performed by the supervisor. Meuwissen also contends that disclosures made as a part of one's job duties are protected, even if the employee does not believe that they will place him at risk. Finally, Meuwissen asserts that his disclosures were made to persons who had the authority to remedy the problem, and that his published opinion "clearly evidences a reasonable belief on his part that the [Agency's] practice of excluding illegitimate children [from heir determinations] was unlawful and contrary to WELSA."

The Agency argues that the Board did not err in dismissing Meuwissen's appeal because Meuwissen did not make any disclosures that were protected under the WPA. The Agency contends that Meuwissen could not have reasonably believed that he disclosed information evidencing a violation of law, rule, or regulation. The Agency emphasizes that, both in his statements to his supervisors and in his final *Smith* decision, Meuwissen failed to identify any law, rule, or regulation that was violated. The Agency alternatively argues that, even if Meuwissen did reasonably believe that he made such a disclosure, his disclosures were not protected under the WPA because they were made in the course of his regular job duties and merely disclosed a trivial violation.

We agree with the Board that Meuwissen failed to state a claim upon which relief can be granted.[2] In order for the Board to have jurisdiction over an IRA appeal involving an allegation of retaliation for "whistleblowing" activities, an employee must make a nonfrivolous allegation that: (1) a disclosure was made, of the type described under 5 U.S.C. § 2302(b)(8); and (2) the disclosure was a contributing factor in the personnel action. *See* 5 U.S.C. § 1221(e)(1) (1994); 5 C.F.R. § 1209.7 (2000); *Willis v. Dep't of Agric.,* 141 F.3d 1139, 1142 (Fed.Cir.1998). Section 2302(b)(8) provides in relevant part that:

(b) Any employee who has authority to take, direct others to take, recommend or approve any personnel action, shall not with respect to such authority—

. . .

(8) take or fail to take, or threaten to take or fail to take, a personnel action with respect to any employee or applicant for employment because of—

(A) any disclosure of information by an employee or applicant which the employee or applicant reasonably believes evidences—

(i) a violation of any law, rule, or regulation. . . .

5 U.S.C. § 2302(b) (1994). Thus, in order for Meuwissen to prevail in his IRA appeal, he was first required to demonstrate by a preponderance of the evidence that he made a disclosure that he reasonably believed evidenced a violation of a law, rule, or regulation. *Willis,* 141 F.3d at 1143.

We agree with the Agency that Meuwissen did not make any "disclosure" that was protected under the WPA. As an initial matter, neither his statements to his supervisors nor his final *Smith* decision "disclosed" any information that was not already known. As conceded by Meuwis-

---

2. While the parties characterize the Board's dismissal as one for lack of jurisdiction, we characterize the issue on appeal as being whether the Board properly dismissed Meuwissen's appeal for failing to state a claim upon which relief can be granted. *See Spruill v. Merit Systems Protection Bd.,* 978 F.2d 679, 686–89 (Fed.Cir.1992).

sen during oral argument, the Agency's policy of excluding illegitimate children from WELSA heirship determinations was publicly known, having been disclosed in the *Beaupre* and *Shangreau* decisions. A disclosure of information that is publicly known is not a disclosure under the WPA. The purpose of the WPA is to protect employees who possess knowledge of wrongdoing that is concealed or not publicly known, and who step forward to help uncover and disclose that information. *See* S.Rep. No. 95–969, 95th Cong., 2d Sess. 8 (1978), *reprinted in* 1978 U.S.C.C.A.N. 2730. As explained in the legislative history of the WPA:

> In the vast Federal bureaucracy it is not difficult to conceal wrongdoing provided that no one summons the courage to disclose the truth. Whenever misdeeds take place in a Federal agency, there are employees who know that it has occurred, and who are outraged by it. What is needed is a means to assure them that they will not suffer if they help uncover and correct administrative abuses.

*Id.* Accordingly, because the Agency's alleged misconduct was not concealed and was already known, Meuwissen's statements to his supervisor and his final *Smith* decision were not "disclosures." *See, e.g.,* Black's Law Dictionary 464 (6th ed.1990) (defining "disclose" as "[t]o bring into view by uncovering; to expose; to make known").

During oral argument, Meuwissen responded that although the Agency's conduct was known, Meuwissen disclosed the illegality of that conduct. However, as noted by the Board, none of his "disclosures" identified any specific law, rule, or regulation that was violated. In his statements to his supervisors, Meuwissen merely disclosed the approach that he would take in addressing prior decisions that he believed were incorrectly decided by a previous judge. In his own words, Meuwissen described to his supervisors "the issues left unresolved by the *Shangreau* case;

and the approach I thought I might take to resolve the issue." *Meuwissen,* slip op. at 7. Thus, although Meuwissen disclosed his belief that a prior decision was incorrectly decided, he did not disclose any illegal or unlawful conduct.

Likewise, in his final *Smith* decision, rather than identifying any violation of a law, rule or regulation, Meuwissen merely stated that the prior *Beaupre* decision was based on a legal conclusion that was "barren of any further explanation, analysis or reasoning and ... contrary to the history and purpose of the WELSA Act." *Id.* at 4. His opinion further stated that he declined to follow this precedent because it was "an erroneous interpretation of the WELSA Act." *Id.* Contrary to Meuwissen's assertions otherwise, these statements did not disclose any illegal or unlawful conduct; they merely indicated Meuwissen's belief that the prior case was wrongly decided. Accordingly, we conclude that substantial evidence supports the Board's factual finding that Meuwissen did not make a disclosure of a violation of any law, rule, or regulation.

■■ Moreover, Meuwissen, as a matter of law, could not have reasonably believed that he disclosed a violation of any law, rule, or regulation. Meuwissen's disclosures consisted of his statements to his supervisors and his final *Smith* decision, which disclosed his belief that the *Beaupre* decision was incorrectly decided. In addition to the fact that the *Beaupre* opinion was public, and that Meuwissen was not making known anything that was not already known, the "disclosure" of a decision by an administrative judge, albeit an incorrect one, is not a disclosure protected under the WPA. Such a decision that is later determined to be contrary to law is not a "violation" of that law or any other law within the meaning of the WPA. An erroneous decision by an administrative judge empowered to make adjudicative decisions based on operative facts and relevant law is not the type of violation comprehended by the WPA because such a decision is

already known and a remedy is already provided for it. The remedy for an incorrect decision is an appeal, which is exactly what occurred with the *Beaupre* decision. The holding in *Beaupre,* that illegitimate children could not be considered as "heirs" under WELSA, was affirmed by the Interior Board of Indian Appeals, *In re WELSA Heirship Determination of Richard C. Beaupre,* 25 IBIA 133 (1994), and the constitutionality of the applicable Minnesota inheritance statute was upheld by the Eighth Circuit, *Shangreau,* 68 F.3d 208. The WPA was not needed to encourage employees to disclose the illegality of such decisions, which are known and readily redressable by appeal. An administrative judge's decision that is contrary to law is thus not a violation of law under the WPA.

Meuwissen's "disclosure" that the Agency, in following the *Beaupre* and *Shangreau* decisions, is acting contrary to law is also not a disclosure of a violation of law within the meaning of the WPA. The Agency is bound to follow the law as elucidated by the courts, and, as explained above, a disclosure by Meuwissen that a court decision is contrary to law is redressable by an appeal by the losing party. Meuwissen is not serving the purpose of the WPA by disclosing what is already known and potentially subject to further appeal.

In summary, although Meuwissen may have believed that he disclosed that a prior decision was based on an erroneous interpretation of WELSA, neither the AJ's act of rendering that decision, nor the Agency's conduct in reliance upon that decision, was a violation of WELSA or any other law, rule, or regulation. Thus, having failed to disclose or allege any violation of law committed by either the AJ or the Agency, Meuwissen's "disclosures" were not protected under the WPA.

## CONCLUSION

Because Meuwissen has not demonstrated that he made a protected disclosure under the WPA, the Board did not err in dismissing his IRA appeal, and we therefore

*AFFIRM.*