NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**JOSEPH A. O'DONNELL,**
*Petitioner,*

**v.**

**MERIT SYSTEMS PROTECTION BOARD,**
*Respondent.*

---

2014-3020

---

Petition for review of the Merit Systems Protection Board in No. CH1221120436-W-1.

---

Decided: April 9, 2014

---

JOSEPH A. O'DONNELL, of Camden, Indiana, pro se.

CALVIN M. MORROW, Attorney, Office of the General Counsel, Merit Systems Protection Board, of Washington, DC, for respondent. With him on the brief was BRYAN G. POLISUK, General Counsel.

DAVID PARDO, The Law Office of David Pardo, of Alexandria, Virginia, for amicus curiae.

---

Before O'MALLEY, MAYER, and WALLACH, *Circuit Judges.*

PER CURIAM.

Joseph A. O'Donnell appeals a final decision of the Merit Systems Protection Board ("the Board") dismissing his individual right of action appeal for lack of jurisdiction under the Whistleblower Protection Act ("WPA"), 5 U.S.C. § 2302 (2012). *O'Donnell v. Dep't of Agric.*, No. CH-1221-12-0436-W-1 (Sep. 10, 2013). Because we agree that Mr. O'Donnell has not established jurisdiction, *we affirm.*

## I. BACKGROUND

Mr. O'Donnell's allegations of retaliation by the National Resource Conservation Service stem from his role as a soil conservationist overseeing agency programs and helping private landowners apply conservation practices to their land. This role includes determining whether customers and their land meet the Department of Agriculture's ("the agency's") eligibility criteria for government assistance. In spring of 2005, Mr. O'Donnell inspected a landowner's property and determined that it was eligible under the agency's Conservation Reserve Program. The landowner's application to the Farm Service Agency ("FSA") was approved on November 21, 2005, and the landowner began work on the project shortly thereafter.

Mr. O'Donnell's supervisor disagreed with the eligibility determination and had the FSA terminate the contract with the landowner. The landowner appealed the revocation of the contract within the FSA. At the hearing on the landowner's appeal, Mr. O'Donnell ignored his supervisor's assessment and testified that the landowner should prevail in his appeal.

The agency thereafter proposed a 5-day suspension for Mr. O'Donnell based on his failure to respect his supervisor's decision. After considering Mr. O'Donnell's response to the proposed suspension, the agency reduced the suspension to 3 days. Mr. O'Donnell filed a complaint

with the Office of Special Counsel ("OSC"), arguing that he should not have been suspended because the WPA does not allow supervisors to punish employees for whistle-blowing. After exhausting his remedies within the OSC, Mr. O'Donnell appealed the OSC's decision not to take corrective action to the Board. The Board found that it did not have jurisdiction because Mr. O'Donnell had not presented non-frivolous allegations that his statements contradicting his supervisor's assessment were protected by the WPA.

Mr. O'Donnell timely appealed to this court. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(9) (2012).

## II. DISCUSSION

The scope of our review in an appeal from a final decision of the Board is limited. We must affirm the Board's decision unless it was: "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c); *Fields v. Dep't of Justice*, 452 F.3d 1297, 1301 (Fed. Cir. 2006). We review decisions of the Board regarding its own jurisdiction without deference. *Fields*, 452 F.3d at 1301–02 (citing *McCormick v. Dep't of the Air Force*, 307 F.3d 1339, 1340 (Fed. Cir. 2002)). Before the Board, an appellant bears the burden of establishing Board jurisdiction. *Id.*

Although the Board's jurisdiction generally does not extend to suspensions of 14 days or less, 5 U.S.C. § 7512(2), Congress has provided federal employees the right to seek corrective action from the Board whenever personnel action is taken in retaliation for whistleblowing activities. 5 U.S.C. § 1221(a) ("Subject to the provisions of subsection (b) of this section and subsection 1214(a)(3), an employee . . . may, with respect to any personnel action taken . . . as a result of a prohibited personnel practice described in section 2302(b)(8)[,] . . . seek corrective action

from the [Board]."). This court has held that the Board has jurisdiction over whistleblower cases "if the appellant has exhausted administrative remedies before the OSC and makes 'non-frivolous allegations' that (1) he engaged in whistleblowing activity by making a protected disclosure under 5 U.S.C. § 2302(b)(8), and (2) the disclosure was a contributing factor in the agency's decision to take or fail to take a personnel action as defined by 5. U.S.C. § 2302(a)." *Yunus v. Dep't of Veterans Affairs*, 242 F.3d 1367, 1371 (Fed. Cir. 2001).

The Board does not contest that Mr. O'Donnell has exhausted his OSC remedies or that Mr. O'Donnell's statements contradicting his supervisor contributed to his suspension. The sole issue on appeal is whether Mr. O'Donnell has made non-frivolous allegations that those statements are protected disclosures under 5 U.S.C. § 2302(b)(8). Section 2302(b)(8) provides in the relevant part that:

> (b) Any employee who has authority to take, direct others to take, recommend, or approve any personnel action, shall not, with respect to such authority—
>
> . . .
>
> (8) take or fail to take, or threaten to take or fail to take, a personnel action with respect to any employee or applicant for employment because of—
>
> (A) any disclosure of information by an employee or applicant which the employee or applicant *reasonably believes* evidences—
>
> (i) any violation of any law, rule, or regulation, or
>
> (ii) gross mismanagement , a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety . . . .

5 U.S.C. § 2302(b) (emphasis added).

Mr. O'Donnell argues that the Board erred in concluding that his statements contradicting his supervisor were not protected disclosures under the WPA. He contends that his disclosure concerned a "violation of law" because it "concerned the violation of the acreage eligibility provisions of Public Law 107-171 Subtitle B, Section 1231(h) 'Pilot Program for Enrollment of Wetland and Buffer Acreage in Conservation Reserve.'" Appellant's Br. 2. Mr. O'Donnell further argues that the Board failed to conduct a "reasonable belief" analysis under the WPA. *Id.* at 5–6; *see* 5 U.S.C. § 2302(b). Mr. O'Donnell also insists that the Board's reliance on *Meuwissen v. Department of Interior*, 234 F.3d 9, 13–14 (Fed. Cir. 2000) was improper because Congress overruled that case as contrary to the original intent of the WPA.

The Board argues that Mr. O'Donnell failed to make non-frivolous allegations that his disclosures were protected under the WPA. The Board contends that Mr. O'Donnell could not have reasonably believed that his supervisor's decision regarding the eligibility of the landowner was a violation of the law or constituted gross mismanagement. To the extent the Board's decision relied on *Meuwissen*, it argues that Congress only overruled *Meuwissen* regarding disclosure of matters which were already publicly known. The Board's decision, on the other hand, cites to *Meuwissen* for the proposition that "an employee's disagreement with an agency ruling or adjudication does not constitute a protected disclosure even if that ruling was legally incorrect." *O'Donnell*, No. CH-1221-12-0436-W-1, slip op. 7.

We agree with the Board that Mr. O'Donnell failed to demonstrate that he made disclosures that he could have "reasonably believed" evidenced a violation of a law, rule, or regulation. The WPA defines protected disclosures as:

a formal or informal communication or transmission, but *does not include a communication concerning policy decisions that lawfully exercise discretionary authority* unless the employee or applicant providing the disclosure *reasonably* believes that the disclosure evidences—

(i) any violation of any law, rule, or regulation; or

(ii) gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety.

5 U.S.C. § 2302(a)(2)(D) (emphasis added). This court recognizes that "[t]he WPA is not a weapon in arguments over policy or a shield for insubordinate conduct. Policymakers and administrators have every right to expect loyal, professional service from subordinates who do not bear the burden of responsibility." *Lachance v. White*, 174 F.3d 1378, 1381 (Fed. Cir. 1999).

In this case, Mr. O'Donnell's supervisor was allowed to lawfully exercise discretionary authority to determine whether property is eligible for the Conservation Reserve Program. *See* 16 U.S.C. § 3831b(a)(2) ("The Secretary [of Agriculture] shall ensure, to the maximum extent practicable, that owners and operators in each State have an equitable opportunity to participate in the program established under this section."). Even assuming Mr. O'Donnell's supervisor's eligibility determination was subject to disagreement, an exercise of discretionary authority is not a "violation of the law." *Accord* S. REP. NO. 112-155, at 7 (2012), *reprinted in* 2012 U.S.C.C.A.N. 589, 595 ("[A]n employee who discloses general philosophical or policy disagreements with agency decisions or actions should not be protected as a whistleblower.").

Mr. O'Donnell's argument that he reasonably believed that his supervisor's eligibility determination was a violation of the law is unpersuasive. The Conservation

Reserve Program law grants discretionary authority to the agency, and Mr. O'Donnell's supervisor was in charge of exercising that discretion. *See* 16 U.S.C. § 3831b(a)(2). No reasonable person could think exercising that discretion is a violation of the law. Mr. O'Donnell's supervisor even took the time to explain his rationale in writing. *See* Appellee's App'x at 21. As the Board explained in its decision, "[t]he orderly administration of [the Board] requires that, for better or for worse, supervisors and managers have the final say in such rulings. A subordinate's refusal to abide by his supervisor's instructions in this regard supplants the orderly appeals process with chaotic agency in-fighting." *O'Donnell*, No. CH-1221-12-0436-W-1, slip op. 7–8. Although the Board did not explicitly say it was performing a "reasonable belief" analysis, we see no basis on which to overturn the Board's decision. *See* 5 U.S.C. § 7703(c).

Mr. O'Donnell's argument that the Board improperly relied on *Meuwissen* is also unpersuasive. The legislature's only objection to the holding in *Meuwissen* was the idea that "disclosures of information already known are not protected." S. REP. NO. 112-155, at 5. The legislature included language to overrule this holding in the revised statute. *See* 5 U.S.C. § 2302(f)(1) ("A disclosure shall not be excluded from subsection (b)(8) because . . . (B) the disclosure revealed information that had been previously disclosed . . . ."). The same Senate Report cited by Mr. O'Donnell goes on to state that "an employee who discloses general philosophical or policy disagreements with agency decisions or actions should not be protected as a whistleblower." S. REP. NO. 112-155, at 7. Indeed, the legislature also included language to make sure a supervisor's discretionary decisions are not challenged by subordinates. 5 U.S.C. § 2302(a)(2)(D) ("'[D]isclosure' means a formal or informal communication or transmission, but *does not include a communication concerning*

*policy decisions that lawfully exercise discretionary au-
thority . . . .*") (emphasis added).

In summary, although Mr. O'Donnell may have sub-
jectively believed that his supervisor's eligibility determi-
nation was erroneous, he could not have reasonably
believed that it constituted a violation of law.  Mr.
O'Donnell has therefore failed to make a non-frivolous
argument that his statements are protected by the WPA,
and the Board properly dismissed his appeal for lack of
jurisdiction.

### III. CONCLUSION

For the foregoing reasons, we affirm the decision of
the Board.

**AFFIRMED**