# IN THE SUPREME COURT OF CALIFORNIA

THE PEOPLE ex rel. LILIA GARCIA-BROWER, as Labor
Commissioner, etc.,
Plaintiff and Appellant,
v.
KOLLA'S, INC.,
Defendant and Respondent.

S269456

Fourth Appellate District, Division Three
G057831

Orange County Superior Court
30-2017-00950004

May 22, 2023

Justice Liu authored the opinion of the Court, in which Chief
Justice Guerrero and Justices Corrigan, Kruger, Groban,
Jenkins, and Evans concurred.

PEOPLE ex rel. GARCIA-BROWER v. KOLLA'S, INC.

S269456

Opinion of the Court by Liu, J.

The Labor Code prohibits employers from retaliating against employees for "disclosing information" concerning suspected violations of the law either internally or to government or law enforcement agencies. (Lab. Code, § 1102.5, subd. (b) (section 1102.5(b)); all undesignated statutory references are to the Labor Code.) Violators are subject to various sanctions, including civil penalties remitted to the Division of Labor Standards Enforcement (DLSE) of the Department of Industrial Relations. (*Id.*, subd. (f).) In this case, employee A.C.R. complained to the owner of the nightclub where she worked about unpaid wages she was owed. In response, her employer fired her, threatened to report her to immigration authorities, and told her never to return to the nightclub. (We follow the practice of the trial court and the Court of Appeal in using the complainant's initials in light of the immigration-related threats against her.) It is undisputed that the employer's conduct was prohibited by the Labor Code. The question here is whether a report of unlawful activities made to an employer or agency that already knew about the violation is a protected "disclosure" within the meaning of section 1102.5(b). We hold it is.

**I.**

From May 2010 to April 2014, complainant A.C.R. worked as a bartender at Kolla's, Inc., a nightclub in Orange County.

1

Because neither Kolla's nor the club's owner, Gonzalo Sanalla Estrada, has participated in this litigation, we take the facts as presented in the Labor Commissioner's complaint and accepted by the trial court. On April 5, 2014, A.C.R. complained to Estrada that she had not been paid wages owed for her previous three shifts of work. Estrada responded by threatening to report A.C.R. to immigration authorities, terminating her employment, and telling her never to return to the club. In June 2014, A.C.R. filed a complaint against Estrada and Kolla's with DLSE, which opened an investigation. After determining that Estrada's immigration-based threats and termination of A.C.R. violated California law, DLSE notified Estrada and Kolla's of proposed remedies, including payment of lost wages to A.C.R., reinstatement of A.C.R.'s previous position, and payment of civil penalties to A.C.R. and DLSE. After Estrada and Kolla's declined to accept DLSE's proposed remedies, the Labor Commissioner sued them for violations of the Labor Code, including retaliation in violation of section 1102.5(b).

The trial court entered an order granting in part the Labor Commissioner's application for default judgment but ruled against the Labor Commissioner on the section 1102.5(b) claim. The court held that the Labor Commissioner did not state a valid cause of action under section 1102.5(b) because A.C.R. reported her complaints to her employer rather than a government agency. The Labor Commissioner appealed.

The Court of Appeal held that the trial court had relied on an outdated version of section 1102.5(b) and that the current version of the law protects disclosures made to one's employer. The Court of Appeal nonetheless affirmed the trial court's judgment on the section 1102.5(b) claim, concluding that a private employee's report of unlawful activity directly to his or

her wrongdoing employer is not a protected disclosure under section 1102.5(b). The court reasoned that the term "disclose" requires "the revelation of something new, or at least believed by the discloser to be new, to the person or agency to whom the disclosure is made." The court explained that Estrada, as the owner of the nightclub, "was at least aware of — if not responsible for — the non-payment of wages" and that an " 'employee's report to the employee's supervisor about the supervisor's own wrongdoing is not a "disclosure" and is not protected whistleblowing activity, because the employer already knows about his or her wrongdoing.' " (*People v. Kolla's Inc.* (May 10, 2021, G057831) [nonpub. opn.], quoting *Mize-Kurzman v. Marin Community College Dist.* (2012) 202 Cal.App.4th 832, 859 (*Mize-Kurzman*).)

Justice Fybel dissented on this point, explaining that the court's narrow reading of "disclosure" did not accord with the term as used throughout section 1102.5, was "thoroughly inconsistent with clear legislative intent," and relied indirectly on outdated federal precedent that was overruled by Congress's revision of federal whistleblower protections. Justice Fybel noted that the Courts of Appeal appear to be split on the proper meaning of "disclose" as used in section 1102.5(b), with *Kolla's* and *Mize-Kurzman* taking a different view than *Hager v. County of Los Angeles* (2014) 228 Cal.App.4th 1538, 1549–1550 (*Hager*).

We granted review. Because Kolla's has not participated in this case, we appointed Christopher Hu of Horvitz & Levy, LLP, to "brief and argue this case, on a pro bono basis, in support of the Court of Appeal's holding that Labor Code section 1102.5, subdivision (b) does not protect an employee from retaliation for disclosing unlawful activity to a person or agency that already

knows about the unlawful activity." We thank Mr. Hu for his service as amicus curiae.

## II.

The Legislature enacted section 1102.5 in 1984 to provide whistleblowers with protection from employer retaliation. (See Assem. Com. on Labor and Employment, Analysis of Assem. Bill No. 2452 (1983–1984 Reg. Sess.) as introduced Jan. 24, 1984, p. 1 ["The intent of this measure is to afford employees some minimum protection against retribution by an employer when the employee reports crimes or violations of the law occurring at his or her place of employment."].) Section 1102.5(b) initially applied only to employees who disclose suspected unlawful activity to a government or law enforcement agency. (Stats. 1984, ch. 1083, § 1, p. 3698.)

In 2003, in the wake of a "recent spate of false business reports and other illegal activity by Enron, WorldCom and others," the Legislature amended section 1102.5(b) to include several additional employee protections. (Assem. Com. on Judiciary, Analysis of Sen. Bill No. 777 (2003–2004 Reg. Sess.) as amended May 29, 2003, p. 1.) These amendments provided new antiretaliation protections to workers who refuse to participate in activities that violate the law or who had engaged in protected whistleblowing activity in past employment, while adding a civil penalty of up to $10,000 for corporations and limited liability companies that violate the statute. (Stats. 2003, ch. 484, § 2, p. 3518.) The Legislature also added section 1102.5, subdivision (e) (section 1102.5(e)) in order to codify the holding in *Gardenhire v. Housing Authority* (2000) 85 Cal.App.4th 236, 243 (*Gardenhire*) that a public employee's report to his or her own agency is a protected disclosure under

section 1102.5, subdivisions (a) and (b). (Stats. 2003, ch. 484, § 2, p. 3518.)

In 2013, the Legislature again amended section 1102.5(b), expanding its protections to include an employee's disclosure made "to a person with authority over the employee or another employee who has the authority to investigate, discover, or correct the violation or noncompliance." (Stats. 2013, ch. 781, § 4.1; see *id.*, § 5.) We have repeatedly held that section 1102.5(b) "reflects the broad public policy interest in encouraging workplace whistle-blowers to report unlawful acts without fearing retaliation." (*Green v. Ralee Engineering Co.* (1998) 19 Cal.4th 66, 77 (*Green*); *Lawson v. PPG Architectural Finishes, Inc.* (2022) 12 Cal.5th 703, 709 (*Lawson*); *Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 287.)

In full, section 1102.5(b) provides: "An employer, or any person acting on behalf of the employer, shall not retaliate against an employee for disclosing information, or because the employer believes that the employee disclosed or may disclose information, to a government or law enforcement agency, to a person with authority over the employee or another employee who has the authority to investigate, discover, or correct the violation or noncompliance, or for providing information to, or testifying before, any public body conducting an investigation, hearing, or inquiry, if the employee has reasonable cause to believe that the information discloses a violation of state or federal statute, or a violation of or noncompliance with a local, state, or federal rule or regulation, regardless of whether disclosing the information is part of the employee's job duties."

Our analysis is informed by two Court of Appeal decisions that disagree on the meaning of "disclose" in section 1102.5(b). First, the court in *Mize-Kurzman* held that "the report of information that was already known [does] not constitute a protected disclosure." (*Mize-Kurzman, supra,* 202 Cal.App.4th at p. 858.) The court explained that the " 'ordinarily understood meaning' " of disclose is " 'to reveal something that was hidden and not known.' " (*Ibid.,* citing Webster's 3d Internat. Dict. (1968) p. 645.) The court found further support in precedent interpreting the federal Whistleblower Protection Act of 1989 (Pub.L. No. 101-12 (Apr. 10, 1989) 103 Stat. 16). (*Mize-Kurzman,* at p. 858, citing *Huffman v. Office of Personnel Management* (Fed.Cir. 2001) 263 F.3d 1341, 1349–1350; see *Huffman,* at p. 1350 ["When an employee reports or states that there has been misconduct by a wrongdoer to the wrongdoer, the employee is not making a 'disclosure' of misconduct."].) The *Mize-Kurzman* court reasoned that "the employer *already knows* about his or her wrongdoing" and "criticism delivered directly to the wrongdoers does not further the purpose of . . . California whistleblower laws to encourage disclosure of wrongdoing to persons who may be in a position to act to remedy it." (*Mize-Kurzman,* at p. 859.)

Subsequently, the Court of Appeal in *Hager* held that section 1102.5(b) "does not limit whistleblower protection only to an employee who discloses unlawful conduct that had not been previously disclosed by another employee." (*Hager, supra,* 228 Cal.App.4th at p. 1549.) The *Hager* court "accept[ed] the dictionary definition of 'disclosure' as used by the court in *Mize-Kurzman. . .,*" but concluded that "the [*Mize-Kurzman*] court did not construe the statutory language in the context of the statute as a whole." (*Id.* at p. 1550.) *Hager* went on to find that neither

the legislative intent of section 1102.5(b) nor the Court of Appeal cases relied on by *Mize-Kurzman* supported limiting whistleblower protection to the first employee to disclose a violation. (*Hager*, at pp. 1550–1552.) "Protection only to the first employee to disclose unlawful acts would defeat the legislative purpose of protecting workplace whistleblowers, as employees would not come forward to report unlawful conduct for fear that someone else already had done so." (*Id.* at p. 1550.)

In this case, the Court of Appeal relied on *Mize-Kurzman* and sought to distinguish *Hager* on the ground that *Hager* focused on whether section 1102.5 includes a " 'first report' rule" — that is, whether whistleblower protections apply only to the first employee to report wrongdoing, such that a "disclosure" cannot include information previously reported by other employees. (*Hager*, *supra*, 228 Cal.App.4th at p. 1550.) The Court of Appeal also reasoned that because *Hager*, like *Mize-Kurzman* but unlike the present case, involved a public employee, section 1102.5(e) governed the court's analysis and protected an employee's "report" of wrongdoing.

## III.

When interpreting a statute, we adopt the construction that best reflects the Legislature's purpose. (*Ferra v. Loews Hollywood Hotel, LLC* (2021) 11 Cal.5th 858, 865 (*Ferra*).) When construing provisions of the Labor Code, " ' "[t]ime and again, we have characterized that purpose as the protection of employees — particularly given the extent of legislative concern about working conditions, wages, and hours when the Legislature enacted key portions of the Labor Code." ' " (*Ibid.*) We therefore " ' "liberally construe the Labor Code . . . to favor the protection of employees." ' " (*Ibid.*)

## A.

We begin by examining the text of the statute. The Court of Appeal held that the word "disclosure" means "the revelation of something new, or at least believed by the discloser to be new, to the person or agency to whom the disclosure is made." But dictionary definitions of "disclose" include "to make openly known" (4 Oxford English Dict. (2d. ed. 1989) p. 738, col. 1) and to "open up to general knowledge" (Webster's 3d New Internat. Dict. (2002) p. 645, col. 2). The Labor Commissioner argues that according to these definitions the information disclosed need not be previously unknown to the recipient. We agree. To "make [something] openly known" (4 Oxford English Dict., *supra*, p. 738, col. 1) or "open [something] up to general knowledge" (Webster's 3d New Internat. Dict., *supra*, p. 645, col. 2) does not require that the "something" be unknown to the current recipient.

Although the word "disclose" often refers to sharing previously unknown information, the word also means bringing into view in a particular context a type of information to which the discloser tends to have special access. The Legislature has invoked this latter meaning in other statutes. For example, various public officials are required to "file a[n annual] statement disclosing the person's investments, interests in real property, and income." (Gov. Code, § 87203.) Judges are required to "disclose any [campaign] contribution from a party or lawyer in a matter before the court" (Code Civ. Proc., § 170.1, subd. (a)(9)(C)), an obligation that applies in "any matter before [the] judge" (Cal. Code Jud. Ethics, canon 3E(2)(b)(i)). Provision of information in compliance with these requirements, which focuses attention on potential conflicts of interest, constitutes a "disclosure" whether or not the information is already known to

some or all of the recipients. Residential landlords are required to provide "written disclosure to prospective and current tenants" where any mold that "poses a health threat" is found, even when that mold is visible or first noticed by the tenants themselves. (Health & Saf. Code, § 26147, subd. (a).) Sellers of single-family homes are required to complete an extensive "disclosure form" that includes information that would likely be known by many prospective buyers. (Civ. Code, §§ 1102.6 [seller's required disclosures include the presence or absence of an oven, patio, and gazebo]; 1102.155 [seller "shall disclose" statutory requirement for the installation of water-conserving plumbing fixtures].) These disclosures again derive their import from the particular context in which they are required, and they involve information to which the discloser tends to have special access, whether or not any particular recipient lacks prior knowledge of the specific information disclosed.

While mandatory disclosure requirements found in a wide range of statutes cannot define the term "disclose" as used in section 1102.5(b), these usages illustrate that "disclose" need not mean only the revelation of information previously unknown to the recipient. The text of section 1102.5(b) includes protection for disclosures made to "another employee who has the authority to *investigate* . . . or *correct* the violation," without regard to whether the recipient already knew of the violation. (Italics added.) The term "disclosure" may reasonably encompass an employee's report or complaint that calls attention to a legal violation or potential violation in the workplace. Workplace wrongdoing is the type of information to which an employee tends to have special access, whether or not any particular recipient of such information has prior knowledge.

Indeed, two Court of Appeal decisions support this definition of "disclose" as the term is used in section 1102.5. (See *Hager*, *supra*, 228 Cal.App.4th at pp. 1549–1550 [finding public employee's disclosure to wrongdoer covered by section 1102.5(b)]; *Jaramillo v. County of Orange* (2011) 200 Cal.App.4th 811, 826 (*Jaramillo*) [same].) In *Jaramillo*, the Court of Appeal held that section 1102.5 protected an assistant sheriff who confronted the county sheriff about the latter's wrongdoing. (*Jaramillo*, at pp. 825–827.) The court concluded that "there is no question" that the assistant sheriff's disclosure "fits within the literal definition of whistleblowing under Labor Code section 1102.5." (*Id.* at pp. 825–826.) Although the assistant sheriff's disclosure would have been covered under section 1102.5(e), which applies to "[a] report made by an employee of a government agency to their employer," the *Jaramillo* court referenced only section 1102.5(b) and made no distinction based on Jaramillo's public employment.

Instead, the court noted that the defendant county's "real complaint" about the statute was that a disclosure made directly to the wrongdoer might ultimately prove ineffective, as that individual "may be the last person . . . willing to do anything about [the violation]." (*Jaramillo*, *supra*, 200 Cal.App.4th at p. 827.) On this point, the court responded that "the injunction obtained by Jaramillo established a 'public benefit' " (*ibid.*) because it "will . . . inure to the benefit of the citizens and taxpayers of the County by lessening the probabilities of abuse and corruption in the sheriff's office" (*id.* at p. 829), and that any "anomaly is properly addressed to the Legislature, not this court" (*id.* at p. 827). In a recent decision, the Ninth Circuit agreed with this reading of section 1102.5(b). (*Killgore v. SpecPro Professional Services, LLC* (9th Cir. 2022) 51 F.4th 973,

988 ["[T]he district court misapplied California law when it rejected evidence of [the employee's] disclosures . . . because [the recipient] was assertedly involved in the wrongful conduct."].)

Parallel whistleblower protections in federal law are also instructive. As noted in Justice Fybel's dissent and the Labor Commissioner's briefing here, *Mize-Kurzman* rested on federal precedent subsequently abrogated by Congress. In 2012, Congress passed the Whistleblower Protection Enhancement Act of 2012 (WPEA) (Pub.L. No. 112-199 (Nov. 27, 2012) 126 Stat. 1465), an update to the Whistleblower Protection Act (WPA), that "clarif[ied] the broad meaning" of disclosure to correct Federal Circuit precedent that had "wrongly accorded a narrow definition to the type of disclosure that qualifies for whistleblower protection." (Sen.Rep. No. 112-155, 2d Sess., pp. 2, 5 (2012) [WPEA overruled, among other cases, *Horton v. Department of Navy* (Fed.Cir. 1995) 66 F.3d 279, 282, which held disclosures to an alleged wrongdoer are not protected because disclosures were not made to someone in a position to remedy wrongdoing, and *Meuwissen v. Department of Interior* (Fed.Cir. 2000) 234 F.3d 9, 12–13, which held disclosures must reveal information that is concealed or not publicly known]; see also 5 U.S.C. § 2302(f)(1)(A)–(B) [confirming that antiretaliation protection is available for disclosures that are "made to a supervisor or to a person who participated in" the alleged wrongdoing or that "reveal[] information that had been previously disclosed"].)

Of course, congressional disapproval of federal court decisions interpreting similar statutes does not control the meaning of the term "disclose" as used in California law. But Congress's clear statement that the protection of disclosures made to the alleged wrongdoer is "required by the plain

language of the WPA" (Sen.Rep. No. 112-155, 2d Sess., *supra*, at p. 5) weighs against the textual argument that "disclosure" can only mean the revelation of information that was previously unknown, or perceived by the discloser to be unknown, to the recipient. Congress did not think the word "disclose" necessitates such a narrow reading. Neither do we.

## B.

Where a statute is subject to "more than one reasonable interpretation, we consider 'the ostensible objectives to be achieved by the statute, the evils to be remedied, the legislative history, public policy, contemporaneous administrative construction and the statutory scheme of which the statute is a part.' " (*Ferra*, *supra*, 11 Cal.5th at p. 865.) The legislative history of section 1102.5(b), its purpose, and its placement within a larger statutory scheme designed to protect workers support a broad reading of the term "disclose" that covers A.C.R.'s conduct here.

Starting with the original debate, passage, and codification of section 1102.5(b) in 1984, the terms "report," "inform," and "complain" have been used interchangeably to describe disclosures protected by the statute. Legislative analyses of the original 1984 bill used these terms interchangeably. (See, e.g., Assem. Com. on Labor and Employment, Analysis of Assem. Bill No. 2452, *supra*, as introduced Jan. 24, 1984, p. 1 [bill protects employees who are "reporting or contacting the . . . government" about violations of the law]; Sen. Com. on Industrial Relations, Analysis of Assem. Bill No. 2452 (1983–1984 Reg. Sess.) as amended Apr. 26, 1984, pp. 1–2 [bill protects "providing information" to a government agency and "reporting crimes"]; Dept. of Industrial Relations,

Div. of Labor Standards Enforcement, Enrolled Bill Rep. on Assem. Bill No. 2452 (1983–1984 Reg. Sess.) Aug. 22, 1984, p. 1 [intent of bill is to protect workers who "report[] crimes" by making "complaints" to the Labor Commissioner].)

When the Legislature first amended section 1102.5 in 2003, these terms were again used interchangeably. (See, e.g., Sen. Judiciary Com., Analysis of Sen. Bill No. 777 (2003–2004 Reg. Sess.) as introduced Feb. 21, 2003, p. 9 [describing codification of *Gardenhire* to mean "employee who has made a disclosure to his or her employing agency is deemed to have made the disclosure to a government or law enforcement agency" before, in the next sentence, saying public employee's "report" would be protected].) In 2013, committee reports once more used these terms interchangeably. (See, e.g., Assem. Com. on Labor and Employment, Analysis of Assem. Bill No. 263 (2013–2014 Reg. Sess.) as amended Apr. 11, 2013, p. 1 [bill protects employees who "fil[e] a complaint or inform[] any person of an employer's [wrongdoing] so long as the complaint or disclosure is made in good faith"].) Committees in both chambers of the Legislature repeatedly stated that "complaints about alleged violations of local law are covered, as well as internal complaints." (Sen. Rules Com., Off of Sen. Floor Analysis, Analysis of Sen. Bill No. 496 (2013–2014 Reg. Sess.) as amended Sept. 6, 2013, pp. 4–5; Off. of Assem. Floor Analyses, 3d reading analysis of Sen. Bill No. 496 (2013–2014 Reg. Sess.) as amended Sept. 6, 2013, p. 2.) Thus, the legislative history suggests that the term "disclose" in section 1102.5(b) was intended to mean "report," "inform," or "complain" — which readily encompasses A.C.R.'s complaint to Estrada in this case.

Amendments to section 1102.5(b) in 2013, which are directly implicated by this case, further support a broad reading of the term "disclose." In that year, three proposed bills sought to amend section 1102.5(b): Senate Bill No. 666 (2013–2014 Reg. Sess.) (Senate Bill 666), Assembly Bill No. 263 (2013–2014 Reg. Sess.) (Assembly Bill 263), and Senate Bill No. 496 (2013– 2014 Reg. Sess.) (Senate Bill 496). The first two bills centered on immigration-related protections; the third focused on expanding whistleblower protections to cover internal disclosures. The section 1102.5 amendments within the three bills were closely related, with each bill containing changes to section 1102.5(b) originally proposed by Senate Bill 496 and a provision that those changes would take effect through whichever bill was enacted last. (Stats. 2013, ch. 577, §§ 5, 5.5, 7; Stats. 2013, ch. 732, §§ 6, 6.5, 9; Stats. 2013, ch. 781, §§ 4, 4.1, 5.) Because these three bills were enacted at the same time on the same subject, we read them as having a common policy goal and an intention to take effect together. (Singer, Sutherland Statutes and Statutory Construction (7th ed. 2013) § 23:18 ["If the same legislative session enacts two or more acts on the same subject they are presumed to embody the same policy and have been intended to have effect together."].) As enacted, Assembly Bill 263 declared: "It is in the public policy interest of the State of California that workers be able to report concerns to their employers without fear of retaliation or discrimination." (Stats. 2013, ch. 732, § 1, subd. (h).) The Legislature's stated aim to protect workers who "report concerns to their employers" (*ibid.*) is entitled to significant weight in discerning the statute's purpose.

The 2013 amendments also expanded whistleblower protections beyond disclosures made to a government or law

enforcement agency to include disclosures made "to a person with authority over the employee or another employee who has the authority to investigate, discover, or correct the violation." (§ 1102.5(b), as amended by Stats. 2013, ch. 732, § 6.) As noted, the statute does not limit its protections to a disclosure directed to a person with the authority to "discover" the alleged violation (i.e., a person who previously did not know about the alleged violation); instead, it also protects a disclosure made to a person with the authority to "investigate . . . or correct" the violation, even if the disclosure does not cause the person to "discover" the violation. (*Ibid.*)

Relying on *Mize-Kurzman*, *supra*, 202 Cal.App.4th 832, 859, the Court of Appeal reasoned that " 'criticism delivered directly to the wrongdoer[] does not further the purpose of . . . encourag[ing] disclosure of wrongdoing to persons who may be in a position to act to remedy it.' " However, the Legislature reasonably could have believed that wrongdoers themselves may often be well positioned to correct their own violations and that being confronted by an employee about violations could motivate an employer to correct those violations. Moreover, whether or not such confrontation leads to a remedy in a given case, providing employees with an internal disclosure option and protecting those employees who disclose wrongdoing directly to the wrongdoer further the purpose of whistleblower protection laws. Estrada, as the owner of Kolla's, was a "person with authority" over employee A.C.R., and he appeared well situated to "correct the violation" disclosed by A.C.R. (§ 1102.5(b).) Construing section 1102.5(b) to cover A.C.R.'s complaint here is fully consistent with the statute's text and with the Legislature's purpose in adding the internal disclosure protections to the statute in 2013.

Applying the Court of Appeal's reasoning here would result in outcomes contrary to the Legislature's purpose. First, although the Court of Appeal purported to reject a "first report" rule, the court's opinion appears to prescribe what amounts to a "first *known* report" rule. This rule would exclude from section 1102.5(b)'s protection a worker who discloses a workplace violation to his or her employer or to a government or law enforcement agency with the knowledge that another employee has disclosed the same violation, or with the unreasonable belief that no one has disclosed the violation. But denying protection for these corroborating disclosures undermines the purpose of section 1102.5(b). Because multiple disclosures would not receive protection, employers and government agencies would miss out on potentially corroborating information that may be valuable in investigating and confirming violations of the law. Without antiretaliation protections, an employee who knows that his or her coworker has already disclosed a violation may be hesitant to disclose the same violation.

Conversely, an employee may reasonably feel more willing to approach an employer about workplace safety hazards, unpaid wages, or overtime violations knowing that his or her coworkers were also disclosing the same unlawful activity. An employer may also be more likely to ameliorate violations, and less able to sweep them under the rug, when multiple employees have disclosed the same wrongdoing. The Court of Appeal decision would limit the ability of employees to report violations, corroborate a coworker's disclosure, or encourage their employers to remedy violations of the law.

Although it is the Legislature's prerogative to impose such limitations, nothing in the legislative history indicates an intent

to do so. In developing the statute, the relevant committees spoke clearly and repeatedly about the purposes and reasoning behind the enactment and expansion of section 1102.5(b): to protect workers, to encourage disclosure, and to promote compliance with employment-related laws and regulations. (See, e.g., Assem. Com. on Labor and Employment, Analysis of Assem. Bill No. 2452, *supra*, as introduced Jan. 24, 1984, p. 1 ["The intent of this measure is to afford employees some minimum protections against retribution by an employer when the employee reports crimes or violations of the law occurring at his or her place of employment"]; Sen. Judiciary Com., Analysis of Sen. Bill No. 777, *supra*, as introduced Feb. 21, 2003, p. 7 [Senate Bill No. 777 is intended to be the "strongest whistleblower protection and corporate accountability law in the nation" to provide " 'an effective early warning system . . . [to detect] corporate fraud' "]; Stats. 2013, ch. 732, § 1, subd. (j) ["It is essential to the enforcement of this state's labor laws that we have broad, clear, and effective protections for workers engaging in conduct protected by law from all forms of employer retaliation . . . ."].)

Moreover, the language of section 1102.5(b) does not support a "first known report" rule. The only reference to an employee's state of mind in section 1102.5(b) is the requirement that the employee "has reasonable cause to believe that the information discloses a [legal] violation." (*Ibid.*) The statute thus does not protect employees who do not believe or who unreasonably believe that the information they are disclosing shows a violation of the law. However, there is no indication that an employee must also have reasonable cause to believe that he or she is the first to report the alleged violation, and we see no basis for reading such a requirement into the statute.

The Court of Appeal's interpretation risks limiting internal disclosures, as employees may fear that reporting wrongdoing to their employers, who may know of the alleged violations, would leave them unprotected under section 1102.5(b). Although employees might instead report the violations to a government agency, the Legislature's 2013 amendments expanded antiretaliation protections to cover internal disclosures, simultaneously providing employees with protection and employers with the opportunity to correct wrongdoing without government involvement. (Stats. 2013, ch. 732, § 1, subd. (h) [expressing state interest "that workers be able to report concerns to their employers without fear of retaliation"].)

## C.

Amicus curiae raises several arguments that section 1102.5(b) should be given the narrow reading endorsed by the Court of Appeal.

Amicus curiae argues that allowing coverage under section 1102.5(b) for a disclosure of known information to an employer would render duplicative section 98.6, which also provides protection against employer retaliation. In general, "we must avoid interpretations [of statutes] that would render related provisions unnecessary or redundant." (*Kleffman v. Vonage Holdings Corp.* (2010) 49 Cal.4th 334, 345.) But a canon of construction cannot supersede the Legislature's clear intent. By its terms, section 98.6 incorporates violations of other sections of the Labor Code, including section 1102.5. (§ 98.6, subd. (a) [prohibiting retaliation against any employee based on "conduct delineated in . . . Chapter 5 . . . of Part 3 of Division 2" of the Labor Code].) It appears that the Legislature

intentionally crafted a statutory scheme with such redundancy in order to provide robust worker protections.

In any event, the relief available under section 98.6 is not identical to the relief available under section 1102.5. (Compare § 98.6, subd. (b)(3) [civil penalties paid to employee] with § 1102.5, subd. (f) [authorizing civil penalties remitted to government].) In addition, only section 1102.5 authorizes courts to award reasonable attorney's fees to any "plaintiff who brings a successful action." (§ 1102.5, subd. (j).) And section 1102.5 claims are evaluated on the basis of a distinct evidentiary standard and framework set by statute. (See § 1102.6; *Lawson*, *supra*, 12 Cal.5th at p. 712 ["section 1102.6 . . . supplies the applicable framework for litigating and adjudicating section 1102.5 whistleblower claims"].)

Amicus curiae also argues that the Legislature's use of the word "report" in section 1102.5(e) provides evidence that "disclose" as used in section 1102.5(b) was intended to have a different, narrower meaning. But this construction would provide broader protection to public employees who disclose wrongdoing to their own employer (where only a "report" is needed) than to public employees who disclose wrongdoing to an outside agency (where the "first known report" rule would apply). There is no indication that the Legislature intended such a distinction.

Moreover, the legislative history of section 1102.5(e) does not support amicus curiae's argument. Prior to the 2013 amendments, section 1102.5(b) covered only disclosures made to a government or law enforcement agency rather than those made to one's own employer. (See *Green, supra,* 19 Cal.4th at 77 [previous version of § 1102.5(b) "does not protect plaintiff,

who reported his suspicions directly to his employer"].)  Under then-current law, it was uncertain whether section 1102.5(b) protected a public employee who made a disclosure to his or her own employing agency:  Was the disclosure protected because it was made to a government agency or unprotected because it was internal?  The Court of Appeal in *Gardenhire* answered this question by holding that a public employee's disclosure to his or her own agency was a protected disclosure under former section 1102.5(b).  (*Gardenhire*, *supra*, 85 Cal.App.4th at p. 243.)

In enacting section 1102.5(e) in 2003, the Legislature sought to codify the holding in *Gardenhire* and thus clarify, not expand, the existing scope of section 1102.5 protections. (Assem. Com. on Judiciary, Analysis of Sen. Bill No. 777, *supra*, as amended May 29, 2003, p. 5 ["The author further states that this bill also would codify the appellate court's ruling in *Gardenhire v. City of Los Angeles Housing Authority*"], italics added.)  In discussing the proposal to codify *Gardenhire*, committees in both the Assembly and Senate used "report" and "disclosure" interchangeably.  (See, e.g., Sen. Judiciary Com., Analysis of Sen. Bill No. 777, *supra*, as introduced Feb. 21, 2003, p. 9.) Instead of creating a new standard for public employees, as amicus curiae argues, the intent of the Legislature in enacting section 1102.5(e) was to clarify that a public employee's internal "report" *is* a protected "disclosure."  (Compare Assem. Com. on Judiciary, Analysis of Sen. Bill No. 777, *supra*, as amended May 29, 2003, p. 5 [by codifying *Gardenhire* "a government employee who has made a disclosure to his or her employing agency is deemed to have made the disclosure to a government or law enforcement agency under the whistleblower statute"] with § 1102.5(e) ["A report made by an employee of a government agency to their employer is a disclosure of information to a

government or law enforcement agency . . . ."].)  Moreover, it would be odd to read the 2003 amendments, enacted after "a series of high profile *corporate* scandals and reports of illicit coverups" (*Lawson*, *supra*, 12 Cal.5th at p. 710, italics added), to have the effect of strengthening protections only for *public* employees.

When the Legislature again amended section 1102.5 in 2013, it expanded the range of protected disclosures to include internal disclosures made by private employees.  (Stats. 2013, ch. 781, § 4.1.)  Because the disclosure requirements did not otherwise change, the Legislature presumably intended the protections afforded to public employees to apply also to private employees.  The history of the 2003 amendments indicates that those protections covered internal employee "reports" because they are "disclosures"; in other words, the Legislature used the term "report" in section 1102.5(e) synonymously with "disclose" in section 1102.5(b).  When the Legislature in 2013 expanded section 1102.5(b) to protect internal disclosures made by all employees rather than only public employees, it gave no indication that anything but the same broad reading of "disclosure" would continue to apply.

Amicus curiae also argues that by not amending section 1102.5 in light of the *Mize-Kurzman* decision, the Legislature acquiesced to the holding of that case.  Amicus curiae is correct that when the Legislature amended section 1102.5 in 2013, it did not respond directly to *Mize-Kurzman*, which was decided a year earlier.  But "[a]rguments based on supposed legislative acquiescence rarely do much to persuade."  (*Scher v. Burke* (2017) 3 Cal.5th 136, 147.)  "Legislative inaction may instead reflect nothing more than ' " 'the sheer pressure of other and more important business, political considerations, or a tendency

to trust . . . the courts to correct their own errors.' " ' " (*Id.* at p. 148.) Here, the case law has continued to develop in the decade since the *Mize-Kurzman* decision, and this is not an instance where the Legislature has repeatedly amended a statute while leaving in place a consistent interpretation of the courts. (Cf. *People v. Bouzas* (1991) 53 Cal.3d 467, 475 [finding legislative acquiescence where Legislature amended the relevant statutes "at least 10 times between 1903 and 1976 without altering the courts' consistent interpretation" of the provisions at issue].) The lack of legislative response to *Mize-Kurzman* is thus " ' " ' a weak reed upon which to lean.' " ' " (*Harris v. Capital Growth Investors XIV* (1991) 52 Cal.3d 1142, 1156.)

Further, amicus curiae contends that our reading of "disclose" threatens "to convert everyday workplace disputes into whistleblower cases." But the protections of section 1102.5(b) apply only where the disclosing employee "has reasonable cause to believe that the information discloses a [legal] violation." (*Ibid.*) This clause imposes a requirement of objective reasonableness and excludes from whistleblower protection disclosures that involve only disagreements over discretionary decisions, policy choices, interpersonal dynamics, or other nonactionable issues. Moreover, an employer accused of retaliation in violation of section 1102.5(b) can rebut the charge by "demonstrat[ing] by clear and convincing evidence that the alleged [retaliatory] action would have occurred for legitimate, independent reasons even if the employee had not engaged in activities protected by Section 1102.5." (§ 1102.6.)

In sum, we hold that a protected disclosure under section 1102.5(b) encompasses reports or complaints of a violation made to an employer or agency even if the recipient already knows of

the violation. We further conclude that complainant A.C.R. made a disclosure protected by section 1102.5(b). And we disapprove *Mize-Kurzman v. Marin Community College Dist.*, *supra*, 202 Cal.App.4th 832 to the extent it is inconsistent with today's opinion.

## CONCLUSION

We remand this case to the Court of Appeal for further proceedings consistent with this opinion.

**LIU, J.**

**We Concur:**

**GUERRERO, C. J.**
**CORRIGAN, J.**
**KRUGER, J.**
**GROBAN, J.**
**JENKINS, J.**
**EVANS, J.**

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion**  People ex. rel. Garcia-Brower v. Kolla's, Inc.

_____

<u>**Procedural Posture**</u> (see XX below)
**Original Appeal**
**Original Proceeding**
**Review Granted (published)**
**Review Granted (unpublished)** XX NP opn. filed 5/10/21 – 4th
Dist., Div. 3
**Rehearing Granted**

_____

**Opinion No.** S269456
**Date Filed:**  May 22, 2023

_____

**Court:**  Superior
**County:**  Orange
**Judge:**  Martha K. Gooding

_____

**Counsel:**

Nicholas Patrick Seitz for Plaintiff and Appellant.

No appearance for Defendant and Respondent.

Horvitz & Levy, Christopher D. Hu, Bradley S. Pauley and Beth J. Jay as Amicus Curiae upon the request of the Supreme Court.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Nicholas Patrick Seitz
Department of Industrial Relations, Division of Labor Standards
Enforcement
464 West 4th Street, Suite 348
San Bernardino, CA 92401
(909) 521-3853

Christopher D. Hu
Horvitz & Levy LLP
505 Sansome Street, Suite 375
San Francisco, CA 94111-3175
(415) 462-5600