NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**VAUGHN HOEFLIN STANDLEY,**

*Petitioner*

**v.**

**MERIT SYSTEMS PROTECTION BOARD,**

*Respondent*

**DEPARTMENT OF ENERGY,**

*Intervenor*

---

2017-1691

---

Petition for review of the Merit Systems Protection Board in No. DC-1221-16-0168-W-1.

---

Decided: November 13, 2017

---

VAUGHN HOEFLIN STANDLEY, Gainesville, VA, pro se.

TARA JEAN KILFOYLE, Office of General Counsel, Merit Systems Protection Board, Washington, DC, for respondent. Also represented by BRYAN G. POLISUK, KATHERINE M. SMITH, JEFFREY A. GAUGER.

ANTHONY F. SCHIAVETTI, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for intervenor. Also represented by CHAD A. READLER, ROBERT E. KIRSCHMAN, JR., ALLISON KIDD-MILLER.

―――――――――――

Before PROST, *Chief Judge*, WALLACH and HUGHES, *Circuit Judges.*

PER CURIAM.

Petitioner Vaughn Hoeflin Standley appeals a final order of the Merit Systems Protection Board ("MSPB") affirming an administrative judge's ("AJ") dismissal of his individual right of action ("IRA") appeal for lack of jurisdiction. *See Standley v. Dep't of Energy*, No. DC-1221-16-0168-W-1, 2017 WL 56181, at ¶ 1 (M.S.P.B. Jan. 3, 2017) (final decision); *Standley v. Dep't of Energy*, No. DC-1221-16-0168-W-1 (M.S.P.B. Jan. 13, 2016) (initial decision) (Resp't's App. 14–25). We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(9) (2012). We affirm.

### BACKGROUND

Mr. Standley works as a general engineer in the Department of Energy's ("DOE") National Nuclear Security Administration ("NNSA"), Office of Nuclear Detonation Detection ("NDD"). *See Standley*, 2017 WL 56181, at ¶ 2; Resp't's App. 30−31. Mr. Standley's responsibilities include work on instrumented payloads that the NNSA contributes to a Department of Defense ("DOD") system of nuclear detonation detection. Resp't's App. 33−34. In January 2014, Mr. Standley told his supervisor there was "a need to field" a third iteration of the Space Atmospheric Burst Reporting System ("SABRS3").[1] *Id.* at 33, 35. In

―――――――――――

[1]   SABRS3 is the third iteration of a satellite payload, SABRS, designed to detect nuclear detonation in

July and August 2014, Mr. Standley reported to his supervisor that he had started the process to begin integrating SABRS3 on a U.S. Air Force satellite. *See id.* at 35−36. The supervisor responded that he was considering de-funding SABRS3 because he did not support NNSA's work on the project beyond "provid[ing] the payload" and did not "want [the] NNSA stuck paying for [SABRS3] for the next [twenty] years." *Id.* at 36. Mr. Standley responded, "Understood. We will stop when you decide." *Id.*

In September 2014, the DOE advertised a Director position in the NDD. *Id.* The Deputy Director of the NDD announced that current employees in the office would not be considered for the Director posting, yet Mr. Standley still submitted his application for the position. *Id.* He was referred to the hiring manager for further consideration, but was ultimately not selected. *Id.* The position was canceled, re-posted in March 2015, and eventually awarded to an office colleague of Mr. Standley's. *Id.* at 36–37, 40.

In November 2014, Mr. Standley filed a grievance with the DOE regarding his non-selection for the Director position, which was denied. *Standley*, 2017 WL 56181, at ¶ 3; Resp't's App. 36−37. In February 2015, Mr. Standley then filed a complaint with the Office of Special Counsel ("OSC"), alleging he was not allowed to compete for the Director position. *See Standley*, 2017 WL 56181, at ¶ 4. However, the OSC investigated, terminated, and closed Mr. Standley's file without taking action in September 2015, notifying him of his right to appeal to the MSPB. *See id.*; Resp't's App. 41, 83–84.

Mr. Standley timely filed an IRA appeal with the MSPB, alleging, inter alia, that the DOE retaliated

---

space. *See Standley*, 2017 WL 56181, at ¶ 2; Resp't's App. 33.

against him, thereby violating 5 U.S.C. § 2302(b)(8)(A) and (b)(9)(D) of the Whistleblower Protection Act ("WPA"), Pub. L. No. 101-12, 103 Stat. 16 (1989) (codified as amended by Whistleblower Protection Enhancement Act of 2012 ("WPEA"), Pub. L. No. 112–199, 126 Stat. 1465 in scattered sections of 5 U.S.C.).[2]  Resp't's App. 14, 33. Specifically, Mr. Standley alleged that:  he "disclosed the need to implement SABRS3" and "refus[ed] to participate in [his supervisor's] plan to cancel SABRS3" because the program was necessary to comply with § 1065 of the National Defense Authorization Act of 2008 ("2008 NDAA"),[3] *id.* at 18, 61; and those disclosures directly

----

[2]    Section 2302(b) provides in relevant part that:

Any employee who has authority to take, direct others to take, recommend, or approve any personnel action, shall not, with respect to such authority— . . . (8) take or fail to take, or threaten to take or fail to take, a personnel action with respect to any employee or applicant for employment because of—(A) any disclosure of information by an employee or applicant which the employee or applicant *reasonably believes* evidences—(i) *any violation of any law*, rule, or regulation, or (ii) . . . a *substantial and specific danger to public health or safety* . . . .

5 U.S.C. § 2302(b) (emphases added).    Section 2302(b)(9)(D) protects employees who "refuse[] to obey an order that would require the individual to violate a law, rule, or regulation." *Id.* § 2302(b)(9)(D).

[3]    Section 1065 of the 2008 NDAA provides, in its entirety, that "[t]he Secretary of Defense shall maintain the capability for space-based nuclear detection at a level that meets or exceeds the level of capability as of the date of the enactment of this Act."  Pub. L. No. 110-181, § 1065, 122 Stat. 3, 324 (2008).

contributed to his supervisor "conspir[ing] to frustrate [his] attempts to compete for" the Director position, *id.* at 18 (internal quotation marks and citation omitted). In its initial decision, the AJ dismissed the appeal for lack of jurisdiction because Mr. Standley "failed to make a non-frivolous allegation that he made a protected disclosure under 5 U.S.C. § 2302(b)(8)[(A)]." *Id.* at 17. Specifically, the AJ found that Mr. Standley's asserted disclosures pertained to "a policy decision" rather than a protected disclosure. *Id.* at 18. Further, the AJ rejected Mr. Standley's § 2302(b)(9)(D) claim because Mr. Standley failed to produce evidence that he was retaliated against for refusing to obey an order that would require him to violate the 2008 NDAA. *Id.*

On petition for review, the MSPB issued a final decision affirming the AJ's dismissal for lack of jurisdiction. *See Standley*, 2017 WL 56181, at ¶ 1. The MSPB determined that Mr. Standley failed to make a non-frivolous allegation that the matter he disclosed was one that a reasonable person in his position would believe evidenced any of the protected disclosures under § 2302(b)(8)(A) given the Secretary of the DOD, not employees of the DOE, is responsible for maintaining the "capability for space-based nuclear detection." *Id.* at ¶ 11 (quoting 2008 NDAA § 1065). Among other things, the MSPB noted that § 1065 of the 2008 NDAA does not limit the DOD to "any particular device or system to maintain space-based nuclear detection capability," so it would not be objectively reasonable that defunding SABRS3 evidenced a "violation of law." *Id.* The MSPB also determined that Mr. Standley failed to "substantiate[] his [§ 2302(b)(9)(D)] allegation that the agency retaliated against him for his opposing the discontinuation of the SABRS3 program." *Id.* at ¶ 15.

DISCUSSION

## I. Standard of Review and Legal Standard

We review the MSPB's legal determinations, including whether the MSPB has jurisdiction over an appeal, de novo. *Johnston v. Merit Sys. Prot. Bd.*, 518 F.3d 905, 909 (Fed. Cir. 2008). "[A]lthough we may review freely" the MSPB's jurisdictional conclusions, "we are bound by the AJ's factual determinations unless those findings are not supported by substantial evidence." *Bolton v. Merit Sys. Prot. Bd.*, 154 F.3d 1313, 1316 (Fed. Cir. 1998). "The petitioner bears the burden of establishing error in the [MSPB]'s decision." *Harris v. Dep't of Veterans Affairs*, 142 F.3d 1463, 1467 (Fed. Cir. 1998).

Congress has provided federal employees the right to seek corrective action from the MSPB whenever personnel action is taken in retaliation for whistle blowing activities. 5 U.S.C. § 1221(a) ("Subject to the provisions of subsection (b) of this section and subsection 1214(a)(3), an employee . . . may, with respect to any personnel action taken . . . as a result of a prohibited personnel practice described in [§] 2302(b)(8) or [§] 2302(b)(9) . . . seek corrective action from the [MSPB]."). The MSPB has jurisdiction over whistleblower cases "if the [petitioner] has exhausted his administrative remedies before the OSC and makes non-frivolous allegations that (1) he engaged in whistleblowing activity by making a protected disclosure under 5 U.S.C. § 2302(b)(8)," or engaged in other protected activity as specified in 5 U.S.C. § 2302(b)(9); and "(2) the disclosure was a contributing factor in the agency's decision to take or fail to take a personnel action as defined by 5 U.S.C. § 2302(a)(2)[(A)]." *Yunus v. Dep't of Veterans Affairs*, 242 F.3d 1367, 1371 (Fed. Cir. 2001) (internal quotation marks omitted); *see Hicks v. Merit Sys. Prot. Bd.*, 819 F.3d 1318, 1320 (Fed. Cir. 2016) (explaining that the WPEA expanded the IRA appeal right to include, inter alia, prohibited practices under § 2302(b)(9)(D)).

"[A] communication concerning policy decisions that lawfully exercise discretionary authority" is not a protected whistleblower disclosure, unless the employee providing the disclosure reasonably believes that the disclosure evidences a "violation of any law, rule, or regulation," or "a substantial and specific danger to public health or safety." 5 U.S.C. § 2302(a)(2)(D); *see Lachance v. White*, 174 F.3d 1378, 1381 (Fed. Cir. 1999) ("The WPA is not a weapon in arguments over policy . . . ."); *O'Donnell v. Dep't of Agric.*, 120 M.S.P.R. 94, at ¶ 14 (2013), *aff'd sub nom. O'Donnell v. Merit Sys. Prot. Bd.*, 561 F. App'x 926 (Fed. Cir. 2014) (dismissing an IRA appeal where disclosures consisted of a "fairly debatable policy dispute"). The test to determine if a petitioner had a reasonable belief that his disclosure evidenced wrongdoing asks whether a "disinterested observer with knowledge of the essential facts known to and readily ascertainable by the employee [could] reasonably conclude that the actions of the [G]overnment evidence[d]" such wrongdoing. *Lachance*, 174 F.3d at 1381.

## II. The MSPB Lacks Jurisdiction over Mr. Standley's Appeal

The main issue on appeal is whether the MSPB erred in concluding that it lacked jurisdiction to consider Mr. Standley's IRA appeal because he failed to non-frivolously allege violations of the WPA.[4] Specifically, the parties dispute whether Mr. Standley's alleged disclosures qualify for protection under § 2302(b)(8)(A) or (b)(9)(D). *See* Pet'r's Br. 3; Resp't's Br. 10–11.[5]

---

[4] On appeal, the parties do not contest that Mr. Standley has exhausted his OSC remedies. *See generally* Pet'r's Br.; Resp't's Br.

[5] Mr. Standley also argues on appeal that adverse retaliatory actions stemmed from those disclosures,

Mr. Standley argues that his disclosures were protected under the WPA because he reasonably believed that: (1) he disclosed and refused to obey an action, namely, his supervisor's decision not to fund SABRS3, which he reasonably believed violated § 1065, and funding the SABRS3 program was not a public policy matter, Pet'r's Br. 2; *see id.* at 6–8; and (2) this action was a "danger to public health and safety" because of "the potential loss of our government's ability to detect nuclear detonations," *id.* at 3. We disagree.

Mr. Standley's allegations amount to a policy dispute, and the record demonstrates that a disinterested observer could not reasonably believe Mr. Standley's disclosures evidenced either a violation of law or a danger to public health and safety. As an initial matter, decisions related to the development of the nuclear detonation program in space fit within the exception to disclosures for "policy decisions that lawfully exercise discretionary authority." 5 U.S.C. § 2302(a)(2)(D); *see O'Donnell*, 561 F. App'x at 930 ("[A]n exercise of discretionary authority is not a 'violation of the law.'"). As the MSPB found, the record shows that decisions related to SABRS3 were committed to an interagency discretionary review process and not to any particular individual acting alone, let alone an employee of the DOE. *See Standley*, 2017 WL 56181, at ¶¶ 11, 13 (describing the interagency process of decision making).

Mr. Standley contends that his disclosure is nevertheless protected because an observer would have a reasona-

---

namely, his failure to obtain an interview for a promotion and his lower performance rating. Pet'r's Br. 4; *see id.* at 17–18. Because we find that Mr. Standley failed to demonstrate that his disclosures were statutorily-protected, we need not consider whether these actions constitute retaliation under the WPA.

ble belief that it evidenced a violation of § 1065 of the 2008 NDAA. That section places responsibility for space-based nuclear detection on the Secretary of the DOD, not the DOE or its employees. *See* 2008 NDAA § 1065. The parties agree that the DOE provides support related to such space-based nuclear detonation detection. *See* Pet'r's Br. 7, 12; Resp't's Br. 12–14. However, as we stated above, neither the NDD nor NNSA are statutorily bound by the directives of the 2008 NDAA. Any pronouncements or decisions made by members of the NDD and NNSA would amount to policy considerations taken to aid the Secretary of the DOD, with whom ultimate legal authority rests.

Moreover, § 1065 does not prescribe any particular means or technology by which space-based nuclear detection capabilities must be maintained. *See* 2008 NDAA § 1065. Rather, it is only violated if detection capability falls below a pre-set standard, and a National Security Council ("NSC") interagency policy committee has the discretion to decide how best to maintain that standard. *See* Resp't's App. 38. Mr. Standley alleges that "[his supervisor's] actions violated [the law]" by calling for an NSC interagency policy committee meeting to recommend ceasing funding SABRS3. *See* Pet'r's Br. 2. However, Mr. Standley has already conceded, and the MSPB found as instructive, that other senior policy makers in the U.S. Air Force and U.S. Strategic Command opposed funding SABRS3 as well. *Standley*, 2017 WL 56181, at ¶ 11 (referencing Resp't's App. 44 (alleging a "particular group in [the interagency committee] . . . would prefer that the SABRS program be terminated")). A disinterested observer could not reasonably conclude that recommending to an external agency how to exercise its discretion, particularly where the recommendation fit within the agency's available and considered options, is a violation of the law.

Finally, for many of the same reasons expressed above, we find that a disinterested observer could not reasonably believe that Mr. Standley's report to his supervisor regarding funding for SABRS3 evidences a danger to public health or safety. "[T]he disclosure of a danger only potentially arising in the future is not a protected disclosure" if it is not "substantial and specific." *Chambers v. Dep't of Interior*, 515 F.3d 1362, 1369 (Fed. Cir. 2008) (citations omitted). *Chambers* lays out a number of factors to consider in determining whether a disclosure is sufficiently substantial and specific to warrant protection, including "likelihood of harm," "speculative or improbable conditions," and "specificity of the alleged danger." *Id.* at 1369. The MSPB weighed these factors and found that, while degradation in capability to detect nuclear blasts in space could affect public health and safety, Mr. Standley had not alleged quantifiable potential harm or likelihood of harm and, therefore, did not meet his burden to show "that such an occurrence is more than a possibility occurring at an undefined point in the future." *Standley*, 2017 WL 56181, at ¶ 12 (footnote omitted). Mr. Standley has not challenged these findings on appeal. *See generally* Pet'r's Br. We see no error in the MSPB's analysis. Thus, Mr. Standley has failed to make a non-frivolous allegation that his statements are protected by the WPA or that the MSPB improperly dismissed his appeal for lack of jurisdiction.

## CONCLUSION

We have considered Mr. Standley's remaining arguments relating to lack of jurisdiction and find them unpersuasive. Accordingly, the Final Order of the Merit Systems Protection Board is

## **AFFIRMED**

### COSTS

Each party shall bear its own costs.