**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**

SAYALI KULKARNI,
                Appellant,

        v.

DEPARTMENT OF VETERANS
    AFFAIRS,
                Agency.

DOCKET NUMBER
DE-1221-19-0157-W-1

DATE: January 30, 2024

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

<u>Abhijit Kulkarni</u>, Salt Lake City, Utah, for the appellant.

<u>Johnston B. Walker</u>, Jackson, Mississippi, for the agency.

**BEFORE**

Cathy A. Harris, Vice Chairman
Raymond A. Limon, Member

**FINAL ORDER**

The appellant has filed a petition for review of the initial decision, which dismissed her individual right of action (IRA) appeal for lack of jurisdiction. Generally, we grant petitions such as this one only in the following circumstances:  the initial decision contains erroneous findings of material fact; the initial decision is based on an erroneous interpretation of statute or regulation

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law.  Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions.  In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law.  *See* 5 C.F.R. § 1201.117(c).

or the erroneous application of the law to the facts of the case; the administrative judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed. Title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115). After fully considering the filings in this appeal, we conclude that the petitioner has not established any basis under section 1201.115 for granting the petition for review. Therefore, we DENY the petition for review. For the reasons set forth below, we DISMISS as settled all but one of the appellant's claims on petition for review. As it concerns the appellant's remaining claim regarding the determination that she belonged on Pay Table 1, we AFFIRM the initial decision except as expressly MODIFIED to address the appellant's claim that her disclosures evidenced a substantial and specific danger to public health or safety.

## BACKGROUND

During the time period relevant to this appeal, the agency employed the appellant and her husband, Abhijit Kulkarni, as Physicians in the Compensation and Pension (C&P) section at the Veterans Health Administration in Salt Lake City, Utah.[2] Initial Appeal File (IAF), Tab 1 at 7, Tab 11 at 53, Tab 13 at 9. In this role, they provided medical opinions used to assess veterans' claims for disability benefits. IAF, Tab 9 at 34-36, Tab 13 at 4, 9; *see* U.S. Department of Veterans Affairs, VA Claim Exam (C&P Exam), https://www.va.gov/disability/va-claim-exam/ (last visited Jan. 29, 2024). After

_____

[2] The appellant's husband also filed an IRA appeal based on many of the same claims as the instant appeal. *See Kulkarni v. Department of Veterans Affairs*, MSPB Docket No. DE-1221-19-0158-W-1.

receiving a February 28, 2019 closure letter from the Office of Special Counsel (OSC), the appellant timely filed the instant IRA appeal.[3] IAF, Tab 1 at 31-32.

In response to the administrative judge's order on jurisdiction, the appellant alleged that, in retaliation for disclosing violations of laws, rules, and regulations, an abuse of authority, gross mismanagement, and a substantial and specific danger to public health and safety, the agency admonished her, gave her a "pay table demotion," and subjected her to a hostile work environment. IAF, Tab 7 at 10-15. In particular, the appellant identified the following disclosures: (1) in or around November 2013, she informed the Chief of Administrative Medicine (CoAM) that the agency is required to have a "sympathetic pro-claimant and non-adversarial approach" in assessing veterans claims for disability benefits and that, contrary to his stated belief that most veterans seeking compensation for post-traumatic stress disorder (PTSD) were malingerers, the best practices guidelines state that veterans may over-report psychiatric symptoms because they are suffering from chronic PTSD difficulties and comorbid affective disorders, *id.* at 10, 27; (2) in an April 7, 2014 email to the CoAM, she requested that a particular doctor no longer be allowed to peer review her work because he evidenced "gross medico-legal incompetence" and "grossly abused the peer review process by harassing [her] and inappropriately pressuring [her] to overturn a disability related PTSD diagnosis in a veteran," *id.* at 11, 30-33; (3) in April and May 2014, she informed the Chief of Staff that the CoAM was incompetent, was abusing the peer review process, suffered from narcissistic personality disorder, was "pressuring [her] to overturn a well

_____

[3] When a veteran applies for disability benefits, the agency may order a C&P examination to gather evidence regarding service connection and the severity of the claimed disability. *See* U.S. Department of Veterans Affairs, VA Claim Exam (C&P Exam), https://www.va.gov/disability/va-claim-exam/ (last visited Jan. 29, 2024). If one is ordered, the doctors within the C&P section review the veteran's file, see the veteran for an appointment, and write a report containing an assessment regarding the veteran's diagnosis, the severity of the diagnosis, and whether the disability is service connected. *Id.* The report is then submitted to the agency claims processor to make a decision on the veteran's claim for benefits. *Id.*

substantiated PTSD diagnosis," and was "grossly mismanaging the administrative medicine service because he fails to take a sympathetic approach towards veterans claiming disabilities," *id.* at 11, 34-37; (4) in her April 2015 testimony before a grievance examiner, she alleged that the CoAM was training providers in the C&P section to look for "superficial inconsistencies" as evidence of malingering in order to minimize and deny veterans benefits, that this approach was contrary to the pro-claimant, sympathetic approach mandated by laws, rules, and regulations, and was causing a reduction in the award of veterans benefits, an increase in appeals, and was "extremely likely" to cause a veteran to commit an act of violence, *id.* at 11, 65-75; and (5) in May 2015 emails, the appellant and her husband informed the Acting Director that, contrary to statute and agency best practices, the CoAM discouraged doctors from diagnosing PTSD in most cases and found fault in the appellant's husband's clinical cases by "falsifying records or violating VA statutes governing Veterans' disability benefits," and they further identified a number of PTSD clinical team examiners and C&P examiners who improperly did not diagnose a veteran with PTSD or attempted to overturn prior PTSD diagnoses, *id.* at 11, 48-53.  The appellant also alleged that the agency perceived her as a whistleblower based on her husband's whistleblowing, which similarly pertained to the C&P section's failure to properly evaluate veterans' disabilities in connection with their claims for benefits and the CoAM's incompetence, bias against veterans claiming disability benefits for PTSD, and narcissistic personality disorder.  *Id.* at 10-13.

Without holding the requested hearing, the administrative judge dismissed the appeal for lack of jurisdiction on the ground that the appellant failed to nonfrivolously allege that she made a protected disclosure.  IAF, Tab 22, Initial Decision (ID).  The appellant has filed a petition for review of the initial

decision, and the agency has responded. Petition for Review (PFR) File, Tabs 1, 3.[4]

## ANALYSIS

During the pendency of the petition for review, the parties submitted a document entitled "SETTLEMENT AGREEMENT" signed and dated by the appellant on May 7, 2020, and by the agency on May 8, 2020. PFR File, Tab 4. The document provides, among other things, that the instant appeal will be dismissed as withdrawn, except for "specific claims related to the determination that [the appellant] belongs on Pay Table 1." *Id.* at 4-5.

Before dismissing a matter as settled, the Board must decide whether the parties have entered into a settlement agreement, whether they understand its terms, and whether they intend to have the agreement entered into the record for enforcement by the Board. *See Mahoney v. U.S. Postal Service*, 37 M.S.P.R. 146, 149 (1988). In addition, before accepting a settlement agreement into the record for enforcement purposes, the Board must determine whether the agreement is lawful on its face and whether the parties freely entered into it. *See Massey v. Office of Personnel Management*, 91 M.S.P.R. 289, ¶ 4 (2002), *overruled on other grounds by Delorme v. Department of the Interior*, 124 M.S.P.R. 123, ¶¶ 11-21 (2017) (holding that the Board may enforce settlement agreements that have been entered into the record, independent of any prior finding of Board jurisdiction over the underlying matter being settled).

Here, we find that the parties have entered into a settlement agreement, understand its terms, and do not intend for the agreement to be entered into the record for enforcement by the Board. PFR File, Tab 4 at 6. As the parties do not

---

[4] The appellant has submitted with her petition for review a number of exhibits regarding PTSD and military sexual trauma, news articles about suicide and acts of violence by veterans, printouts of regulations, and copies of emails from 2014 through 2016. PFR File, Tab 1 at 33-67. The appellant has not alleged or shown that these documents were unavailable below despite her due diligence, and we therefore do not consider them for the first time on review. *See Avansino v. U.S. Postal Service*, 3 M.S.P.R. 211, 214 (1980).

intend for the Board to enforce the settlement agreement, we do not address the additional considerations regarding enforcement and do not enter the settlement agreement into the record for enforcement by the Board.

Accordingly, we find that dismissing all claims except those relating to Pay Table 1 "with prejudice to refiling" (i.e., the parties normally may not refile this appeal) is appropriate under these circumstances.

We turn now to the appellant's remaining claim. The Board has jurisdiction over an IRA appeal if the appellant has exhausted her administrative remedies before OSC and makes nonfrivolous allegations of the following: (1) she made a disclosure described under 5 U.S.C. § 2302(b)(8) or engaged in protected activity described under 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D); and (2) the protected disclosure or activity was a contributing factor in the agency's decision to take or fail to take, or threaten to take or fail to take, a personnel action as defined by 5 U.S.C. § 2302(a).[5] *Salerno v. Department of the Interior*, 123 M.S.P.R. 230, ¶ 5 (2016); *see* 5 U.S.C. §§ 1221(e)(1), 2302(b)(8).[6]

A nonfrivolous allegation of a protected whistleblowing disclosure is an allegation of fact that, if proven, would show that the appellant disclosed a matter that a reasonable person in her position would believe evidenced one of the categories of wrongdoing specified in 5 U.S.C. § 2302(b)(8). *Salerno*, 123 M.S.P.R. 230, ¶ 6. The test to determine whether a putative whistleblower has a reasonable belief in the disclosure is an objective one: whether a disinterested observer with knowledge of the essential facts known to and readily ascertainable by the employee could reasonably conclude that the actions of the agency evidenced a violation of any law, rule, or regulation, gross

---

[5] In the initial decision, the administrative judge found, and we agree, that the appellant exhausted the claims raised in this appeal before OSC. ID at 2-3; IAF, Tab 1 at 31-32, Tabs 14-18.

[6] We have reviewed the relevant legislation amending the whistleblower protection statutory scheme that was enacted during the pendency of this appeal and have concluded that it does not affect the outcome of the appeal, nor does it affect the relevant holdings of the case law cited in this Final Order.

mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety. *Id.*; *see* 5 U.S.C. § 2302(b)(8). An appellant must make specific and detailed allegations; vague, conclusory, or unsupported allegations, such as one that essentially repeats the legal standard, without more, are pro forma and insufficient to meet the nonfrivolous standard. *Clark v. U.S. Postal Service*, 123 M.S.P.R. 466, ¶¶ 6, 8 (2016), *aff'd per curiam*, 679 F. App'x 1006 (Fed. Cir. 2017), *and overruled on other grounds by Cronin v. U.S. Postal Service*, 2022 MSPB 13, ¶ 20 n.11. As the U.S. Court of Appeals for the Federal Circuit held, "the question of whether the appellant has non-frivolously alleged protected disclosures that contributed in a personnel action must be determined based on whether [she] alleged sufficient factual matter, accepted as true, to state a claim that is plausible on its face." *Hessami v. Merit Systems Protection Board*, 979 F.3d 1362, 1369 (Fed. Cir. 2020). In addition, "the Board may not deny jurisdiction by crediting the agency's interpretation of the evidence as to whether the alleged disclosures fell within the protected categories or whether the disclosures were a contributing factor in an adverse personnel action."[7] *Id.*

In the initial decision, the administrative judge found that the appellant's disclosures regarding "violations of VA statutes governing Veterans' disability benefits, abuse of authority to enforce those violations, and ultimately gross mismanagement of the Compensation & Pension Service" and the CoAM finding "fault in a series of [the appellant's husband's] clinical cases, by either falsifying records or violating VA statutes governing Veterans' disability benefits" were pro forma and did not amount to a nonfrivolous allegation of protected whistleblowing. ID at 6. He further found that the appellant's disclosure that the

---

[7] The administrative judge did not have the benefit of *Hessami* at the time he issued his initial decision. However, we find that the administrative judge's analysis was consistent with *Hessami* because he did not consider the agency's evidence or arguments in finding that the appellant failed to make the requisite nonfrivolous allegations. ID at 5-10.

CoAM was incompetent or a narcissist could not be a protected disclosure, despite the "disorder" label and her assertion that she was a certified psychiatrist. ID at 6-7. Regarding the appellant's disclosures that the CoAM and other doctors failed to take a sufficiently pro-claimant approach and underdiagnosed, or pressured others not to diagnose, PTSD, the administrative judge found no nonfrivolous allegation of a protected disclosure because these disclosures represented a policy disagreement that did not otherwise evidence one of the categories of wrongdoing specified in section 2302(b)(8). ID at 7-10.

On review, the appellant reiterates her claim that her disclosures evidence a violation of the "strongly and uniquely pro claimant" laws and regulations governing veterans' disability claims and specifies, for the first time, that the CoAM and others violated 38 C.F.R. § 3.102, which requires the agency to resolve reasonable doubt in favor of the veteran seeking benefits. PFR File, Tab 1 at 4-26. She also argues again that her disclosures of an abuse of authority, gross mismanagement, and a substantial and specific danger to public health and safety were protected.[8] *Id.*

Even under the expanded protections afforded to whistleblowers under the Whistleblower Protection Enhancement Act (WPEA), general philosophical or policy disagreements with agency decisions that "lawfully exercise discretionary authority" are not protected unless the appellant has a reasonable belief that the disclosed information separately evidences one of the categories of wrongdoing listed in section 2302(b)(8)(A). *Webb v. Department of the Interior*, 122 M.S.P.R. 248, ¶¶ 8-9, 12 n.6 (2015); *see* 5 U.S.C. § 2302(a)(2)(D).

Here, the appellant's disclosures pertain to perceived errors in their interpretation and application of the reasonable doubt regulation and the resulting diagnoses. We agree with the administrative judge that these disclosures amount

[8] The appellant has not challenged on review, and we discern no reason to disturb, the administrative judge's determination that her pro forma allegation that the CoAM falsified records was insufficient to meet the nonfrivolous standard. PFR File, Tab 1; ID at 6.

to disagreement over a lawful exercise of discretionary authority. ID at 9-10; *see* 5 U.S.C. § 2302(a)(2)(D); *Webb*, 122 M.S.P.R. 248, ¶¶ 2, 10 (finding that the appellant's position paper advocating for a different organizational restructuring was a policy disagreement with the agency's lawful decision to restructure a division pursuant to the Secretary of the Interior's directive). In addition, for the reasons discussed below, we find that these policy disagreements do not separately evidence a reasonable belief in one of the categories of wrongdoing specified in section 2302(b)(8).

As discussed in the initial decision, erroneous rulings by the agency do not constitute a "violation of law," and an employee's disagreement with an agency ruling or adjudication does not constitute a protected disclosure even if that ruling was legally incorrect. *O'Donnell v. Department of Agriculture*, 120 M.S.P.R. 94, ¶ 15 (2013), *aff'd*, 561 F. App'x 926 (Fed. Cir. 2014), *clarified on other grounds by Webb*, 122 M.S.P.R. 248, ¶ 9. Such erroneous rulings are corrected through the appeals process—not through insubordination and policy battles between employees and their supervisors. *Id.* There are a large number of Federal agencies that rule on citizens' applications for benefits or redress every day, and the orderly administration of these agencies requires that, for better or for worse, supervisors and managers have the final say in such rulings. *Id.* A subordinate's refusal to abide by her supervisor's instructions in this regard supplants the orderly appeals process with chaotic agency in-fighting. *Id.* Such insubordination is not protected by the WPEA. *Id.*, ¶ 15 & n.5.

In *O'Donnell*, the Board found that a soil conservationist's memorandum stating his disagreement with his supervisor's determination that a landowner was not eligible for enrollment in the agency's Conservation Reserve Program was not a nonfrivolous allegation of a protected disclosure, even though he believed his supervisor's determination was contrary to agency policy. *O'Donnell*, 120 M.S.P.R. 94, ¶ 15. In addition, the Federal Circuit has found that an administrative judge with the Department of the Interior's Office of Hearing and

Appeals did not nonfrivolously allege that he made a protected disclosure when he disagreed with the findings in a prior case. *Meuwissen v. Department of the Interior*, 234 F.3d 9, 13-14 (Fed. Cir. 2000), *superseded by statute on other grounds as stated in O'Donnell*, 120 M.S.P.R. 94, ¶ 15 n.5. Here, the administrative judge found that the appellant's disclosures that the CoAM and others were prejudiced against certain types of veterans' benefits claims and failed to take a sympathetic approach in assessing their claimed disabilities were analogous to the disclosure rejected as failing to meet the nonfrivolous standard in *O'Donnell.* ID at 7-10. We agree.

As noted above, when a veteran applies for disability benefits, the agency may order a C&P examination to gather evidence regarding service connection and the severity of the claimed disability. *See* U.S. Department of Veterans Affairs, VA Claim Exam (C&P Exam), https://www.va.gov/disability/va-claim-exam/ (last visited Jan. 29, 2024). The providers within the C&P section are responsible for providing a report containing this information to the agency claims processor, who makes a determination on the veteran's claim. *Id.* If a veteran disagrees with the agency's decision, he or she is entitled to request a higher-level review or file an appeal with the Board of Veterans Appeals. 38 C.F.R. § 3.2500. Accordingly, as in *O'Donnell* and *Meuwissen*, any erroneous decision may be corrected through the appeals process, and the appellant's disagreement with the C&P section's approach and assessment of the veterans' medical conditions does not constitute a nonfrivolous allegation of a violation of law, rule, or regulation, even if the resulting disability benefits decisions were incorrect. *See O'Donnell*, 120 M.S.P.R. 94, ¶ 15; *see also Meuwissen*, 234 F.3d at 13-14.

We find that the appellant failed to nonfrivolously allege that her disclosures evidence a reasonable belief that the CoAM's conduct constituted gross mismanagement. Gross mismanagement is a management action or inaction that creates a substantial risk of significant adverse impact on the agency's ability

to accomplish its mission. *Swanson v. General Services Administration*, 110 M.S.P.R. 278, ¶ 11 (2008). Here, the appellant argues that her disclosure regarding the CoAM's "confrontational approach to C&P constituted gross mismanagement because it was a management action which created a substantial risk of significant adverse impact upon the agency's ability to accomplish its mission" and that, because of his gross mismanagement, "our service line of administrative medicine did fall apart just like we predicted." PFR File, Tab 1 at 10, 18. She also notes, as she did below, that the Office of Accountability Review (OAR) and Administrative Investigation Board (AIB) substantiated her disclosure of mismanagement when it found that the CoAM failed to provide appropriate management of the C&P programs. *Id.* at 19-21; IAF, Tab 7 at 29, Tab 8 at 33-34. We agree with the administrative judge that these pro forma allegations of gross mismanagement, which recite the legal standard but fail to identify any specific risk to the agency's ability to accomplish its mission, are insufficient to meet the nonfrivolous standard. *See Clark*, 123 M.S.P.R. 466, ¶¶ 6, 8; ID at 6. In addition, the appellant's argument that the OAR/AIB substantiated her belief in the reasonableness of her gross mismanagement disclosure is unavailing because the misconduct identified by the OAR/AIB— namely, issues with pay for poor performers, untimely exams, and too much time allotted for administrative time and examinations—is not the alleged mismanagement she disclosed.[9] IAF, Tab 8 at 33-34.

We find that the appellant's disclosures amounted to disagreement with the CoAM's lawful exercise of discretionary authority rather than a protected disclosure of an abuse of authority. *See* 5 U.S.C. § 2302(a)(2)(D); *O'Donnell*, 120 M.S.P.R. 94, ¶ 15. An abuse of authority is defined as an arbitrary or capricious exercise of power by a Federal official or employee that adversely

---

[9] Regarding the alleged harm actually disclosed by the appellant, the OAR/AIB found that, while the CoAM's negative comments relating to veterans seeking disability benefits were "prevalent and consistent," it could not substantiate allegations that he imposed a higher burden of proof for approving veterans' claims. IAF, Tab 8 at 33-34.

affects the rights of any person or that results in personal gain or advantage to himself or to preferred other persons. *Chavez v. Department of Veterans Affairs*, 120 M.S.P.R. 285, ¶ 22 (2013). The appellant argues that her disclosures that the CoAM used the peer review process to "deprive Veterans of their right to receive benefits" and "to enforce illegal orders to illegally deny Veterans benefits" evidence an abuse of authority because they show an "arbitrary or capricious exercise of power by a federal official or employee that adversely affects the rights of any person." PFR File, Tab 1 at 9, 12-13, 20. Because these arguments are vague and conclusory, making unsupported assertions and repeating the legal standard, we agree with the administrative judge that the appellant failed to nonfrivolously allege that she made a protected disclosure of an abuse of authority. *See Clark,* 123 M.S.P.R. 466, ¶¶ 6, 8.

The appellant also argued below that her disclosure of an "illegal reduction of Veterans' disability benefits" evidenced a substantial and specific danger to public health and safety because a veteran who has been denied benefits may become violent or commit suicide. IAF, Tab 7 at 11, Tab 9 at 70. In support, she provided news articles and agency notices regarding a number of incidents in which a veteran with PTSD committed suicide or an act of violence, including several where the veteran took these actions after the agency denied him benefits or treatment. IAF, Tab 8 at 22-27. The administrative judge did not specifically address this claim, which the appellant raises again on review. PFR File, Tab 1 at 11-15. Because disclosures of dangers to public health or safety must be considered separately from other types of disclosures, and "the fact that a particular health or safety statement involves a policy decision or disagreement does not deprive it of protection," we modify the initial decision to address this claim. *See Chambers v. Department of the Interior*, 602 F.3d 1370, 1371 (Fed. Cir. 2010).

In determining whether a disclosed danger is sufficiently substantial and specific to warrant protection under the Whistleblower Protection Act (WPA), the

Board considers the following factors: (1) the likelihood of harm resulting from the danger; (2) when the alleged harm may occur; and (3) the nature of the harm, i.e., the potential consequences. *Id.* The Federal Circuit has explained that, "[c]onsistent with these factors, the outcomes of past cases . . . have depended upon whether a substantial, specific harm was identified, and whether the allegations or evidence supported a finding that the harm had already been realized or was likely to result in the reasonably foreseeable future." *Id.* Revelation of a negligible, remote, or ill-defined peril that does not involve any particular person, place, or thing, however, is not protected. *Sazinski v. Department of Housing and Urban Development*, 73 M.S.P.R. 682, 686 (1997). In addition, the disclosure of a danger only potentially arising in the future is not a protected disclosure. *Herman v. Department of Justice*, 193 F.3d 1375, 1379 (Fed. Cir. 1999), *abrogated on other grounds by Yunus v. Department of Veterans Affairs*, 242 F.3d 1367, 1372 n.1 (Fed. Cir. 2001).

We agree with the appellant that the potential consequences of a veteran with mental health issues becoming violent or suicidal are substantial, and it is undisputed that such incidents have occurred all too frequently in the past. However, her allegation that such harm may occur at some point in the future because of an insufficiently sympathetic C&P examination or the denial of a disability benefits claim is too remote and speculative to be protected under the WPA. *See id.* at 1378-80 (finding that a psychologist did not disclose a substantial and specific danger to public safety under the WPA when he speculated that the prison camp's failure to have a suicide watch room on the premises was potentially dangerous for suicidal inmates); *Mogyorossy v. Department of the Air Force*, 96 M.S.P.R. 652, ¶¶ 16-17 (2004) (finding that a security guard's disclosure that he was permitted only to load three of four possible shells into his shotgun evidenced merely a speculative danger that might occur at some point in the future); *see also* S. Rep. No. 95-969, at 21 (1978), *as reprinted in* 1978 U.S.C.C.A.N. 2723, 2743 (explaining that "general criticism by

an employee of the Environmental Protection Agency that the Agency is not doing enough to protect the environment would not be protected under this subsection"). Accordingly, we find that the appellant has not made a nonfrivolous allegation of a protected disclosure of a substantial and specific danger to public health or safety.[10]

Finally, the appellant argued below that she made a protected disclosure when she informed agency management of the CoAM's incompetence and narcissistic personality disorder. IAF, Tab 7 at 10-13. She explained that, because of this disorder, the CoAM required "automatic compliance with his illegal orders to enforce an illegal adversarial approach to Veterans' disability claims," which resulted in "illegal reduction of Veterans' disability benefits" and was likely to cause "substantial danger in the immediate or near future." *Id.* In the initial decision, the administrative judge found that the appellant's accusation that her supervisor was incompetent or a narcissist could not be a protected disclosure, despite the "disorder" label and her assertion that she was a certified psychiatrist. ID at 6-7.

On review, the appellant argues that she disclosed that the CoAM was an impaired physician, that she had a duty to report it, and that the diagnosis was based on the criteria set forth in the Diagnostic and Statistical Manual of Mental Disorders and was "objectively reasonable enough to warrant OAR AIB Investigation." PFR File, Tab 1 at 15-23. Although the Board has previously found an impaired provider disclosure to be protected, the disclosure in that case concerned an allegedly cognitively impaired physician who exhibited unusual behavior and deficient patient care. *Skarada v. Department of Veterans Affairs*, 2022 MSPB 17, ¶¶ 2, 13 n.3. The Board explained that the disclosed danger in

---

[10] In *Hessami*, 979 F.3d at 1370, the court found that the appellant made a nonfrivolous allegation that she reasonably believed that her disclosures concerning patient care evidenced a substantial and specific danger to public health or safety. In contrast, the disclosures in the instant appeal do not pertain to harm that might arise directly from patient care practices; they are speculative conjectures of harm that might arise indirectly from disability evaluation decisions.

that case could undoubtedly lead to immediate and serious harm to patients. *Id.*, ¶ 13 n.3. Here, on the other hand, the appellant has not alleged, and there is no indication, that the CoAM treated patients or that he posed a direct threat to himself or others. In addition, for the reasons the appellant's disclosures regarding the C&P section's adversarial approach and underdiagnosis of PTSD are not protected, her disclosures that the CoAM's incompetence and narcissistic personality disorder caused the adversarial approach and underdiagnosis of PTSD are not protected. Accordingly, we discern no basis to disturb the administrative judge's determination that the appellant failed to nonfrivolously allege that her disclosures regarding the CoAM's incompetence and personality disorder were protected.

In light of the foregoing, we find that the appellant failed to nonfrivolously allege that she made any protected disclosures. Therefore, the administrative judge properly dismissed this IRA appeal, including the pay table claim, for lack of jurisdiction.

## NOTICE OF APPEAL RIGHTS[11]

The initial decision, as supplemented by this Final Order, constitutes the Board's final decision in this matter. 5 C.F.R. § 1201.113. You may obtain review of this final decision. 5 U.S.C. § 7703(a)(1). By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file. 5 U.S.C. § 7703(b). Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction. If you wish to seek review of this final decision, you should immediately review the law applicable to your

---

[11] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions. As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

claims and carefully follow all filing time limits and requirements. Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case. If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) <u>Judicial review in general</u>**. As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be <u>received</u> by the court within **60 calendar days** of <u>the date of issuance</u> of this decision. 5 U.S.C. § 7703(b)(1)(A).

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals<br>
for the Federal Circuit<br>
717 Madison Place, N.W.<br>
Washington, D.C. 20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

**(2) Judicial or EEOC review of cases involving a claim of discrimination**.  This option applies to you <u>only</u> if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination.  If so, you may obtain judicial review of this decision—<u>including a disposition of your discrimination claims</u>—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** <u>after you receive</u> this decision.  5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. 420 (2017).  If you have a representative in this case, and your representative receives this decision before you do, then you must file with the district court no later than **30 calendar days** <u>after your representative</u> receives this decision.  If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security.  *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of <u>your discrimination claims only, excluding all other issues</u>.  5 U.S.C. § 7702(b)(1).  You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** <u>after you receive</u> this decision.  5 U.S.C. § 7702(b)(1).  If you have a representative in this case, and your representative receives this decision before you do, then you must file with the EEOC no later than **30 calendar days** <u>after your representative receives</u> this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C.  20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C.  20507

**(3) Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012**.  This option applies to you only if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D). If so, and your judicial petition for review "raises no challenge to the Board's disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.[12]  The court of appeals must receive your petition for review within **60 days** of the date of issuance of this decision.  5 U.S.C. § 7703(b)(1)(B).

---

[12] The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017.  The All Circuit Review Act, signed into law by the President on July 7, 2018, permanently allows appellants to file petitions for judicial review of MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction. The All Circuit Review Act is retroactive to November 26, 2017.  Pub. L. No. 115-195, 132 Stat. 1510.

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.


*Gina K. Grippando*

FOR THE BOARD:                    _____
                                  Gina K. Grippando
                                  Clerk of the Board
Washington, D.C.